Edward Charles PICKENS *v.* STATE of Arkansas

CR 86-42                              730 S.W.2d 230

Supreme Court of Arkansas
Opinion delivered June 1, 1987
[Rehearing denied June 29, 1987.*]

---

* Hickman, J., would grant rehearing.

*Achor & Rosenzweig*, by: *Jeff Rosenzweig*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. On October 20, 1975, several people

were shot in a robbery of a grocery store in Arkansas County. Three people were charged in the case, one being appellant. Venue for appellant was changed to Prairie County, where appellant subsequently was convicted of the capital felony murder of Wesley Noble, one of the customers in the store. Appellant was sentenced to death. The conviction and sentence were upheld in *Pickens* v. *State*, 261 Ark. 756, 551 S.W.2d 212 (1977). In *Pickens* v. *Lockhart*, 714 F.2d 1455 (8th Cir. 1983), appellant's death sentence was vacated because of ineffective assistance of counsel, and remanded to state court to permit it to reduce appellant's sentence to life without parole or to conduct a new sentencing procedure. A resentencing trial took place in Prairie County Circuit Court in September 1985, and appellant was again sentenced to death. He appeals this new sentence, listing ten points for reversal. Some of these ten points include an additional number of sub-issues or reasons why appellant claims this cause should be reversed. Because we agree with appellant's first argument, we decide and discuss only those points which are required for the remand and retrial of this case.

Appellant's first argument centers on his having been found guilty of capital murder, after which, the jury, during the penalty phase, unanimously imposed the death sentence. In doing so, the jury was required to find that the aggravating circumstances of the murder outweighed all mitigating circumstances found to exist and the aggravating circumstances justified a sentence of death beyond a reasonable doubt. Ark. Stat. Ann. §§ 41-1301(3)(4) and -1302(1) (Repl. 1977). Appellant argues that the trial court erred in limiting appellant's proof concerning mitigating circumstances to those circumstances that existed in October 1975, the time of the murder. In this respect, appellant contends that the trial judge should have allowed him to introduce the testimony of various witnesses regarding character, rehabilitation, adjustment to prison and good works he had undergone or performed since the murder occurred.

In support of this argument, appellant relies upon the Supreme Court's recent holding in *Skipper* v. *South Carolina*, 476 U.S. ___, 106 S.Ct. 1669 (1986). In *Skipper*, the trial court excluded the testimony of two jailers and a "regular visitor" regarding the defendant's good behavior while he was in jail for seven months awaiting trial. The Supreme Court held the trial

court's exclusion of such testimony denied Skipper his right to place before the sentencer relevant evidence in mitigation of punishment. The Court said: "Although it is true that any such inferences would not relate specifically to petitioner's culpability for the crime he committed, [cite omitted], there is no question but that such inferences would be 'mitigating' in the sense that they might serve 'as a basis for a sentence less than death.' " 106 S.Ct. at 1671.

The State argues the *Skipper* decision should be limited to its facts and suggests a temporal limit exists that precludes a defendant from offering mitigating circumstances which arise after the jury decides the defendant is guilty of capital murder. The State submits to construe the *Skipper* holding otherwise would permit defendants, who are able to extend their appeals and post-conviction relief processes the longest, an opportunity to collect evidence in mitigation that, in time, is far removed from the circumstances of the crime, as well as from what their characters were when they committed the offense. Such an open-ended procedure, the State suggests, bestows on some death-row inmates the opportunity to accumulate mitigating evidence while others may not be so fortunate. In sum, the State concludes that to permit such erratic opportunities to present additional, post-sentence mitigation would produce capricious, arbitrary and freakish results in the application of the death penalty in Arkansas for years.

While the State's argument seems based on sound logic and reason, its position is not unlike the one argued to and rejected by the Court in the *Skipper* case. The *Skipper* majority Court's holding, and its effect on the mitigating evidence issue before us now, can best be understood by first reading Justice Powell's concurring opinion, joined in by then-Chief Justice Burger and Justice Rehnquist. Those concurring Justices clearly stated that they joined in reversing the South Carolina trial court not because it excluded "relevant mitigating evidence" but only because the petitioner was not allowed to rebut evidence and argument used against him. Otherwise, the concurring Justices strongly disagreed with the majority Court holding that a defendant's conduct after the crime should be considered "mitigating evidence" and that the sentencer must consider such conduct under the Constitution. Justice Powell concluded:

> I see no reason why a State could not, consistent with these principles, exclude evidence of a defendant's good behavior in jail following his arrest, as long as the evidence is not offered to rebut testimony or argument such as that tendered by the prosecution here. *Such evidence has no bearing at all on the "circumstances of the offense," since it concerns the defendant's behavior after the crime has been committed.* (Emphasis supplied.)

Again, the majority Court in *Skipper* rejected Justice Powell's expressed views that a state should have the right to exclude evidence of a defendant's conduct while awaiting trial or sentencing. In doing so, the majority placed emphasis not on the defendant's culpability for the crime he committed, but instead it held the sentencer should be able to consider *any aspect of a defendant's character or record* or any of the circumstances of the offense that the defendant proffers "as a basis for a sentence less than death." It said further that evidence that the defendant would not pose a danger if spared (but incarcerated) must be potentially mitigating.

We believe the *Skipper* decision mandates, in clear terms, that any relevant mitigating evidence concerning a defendant's character should not be excluded. That evidence may include, as the situation here, the defendant's behavior and conduct that existed not only before and at the time of the crime, but also that which occurred before sentencing and during the period of post-conviction relief, should a later resentencing occur. Accordingly, we reverse and remand this cause for resentencing to be conducted consistent with the *Skipper* holding and this court's opinion.

Appellant raises one other meritorious argument. In this respect, appellant argues the trial court erred in refusing to excuse certain jurors for cause, two of them because they indicated they would automatically impose the death penalty if appellant were convicted of murder. The State made every effort to rehabilitate one of those two jurors by leading him to say, "No, sir," when asked, "Now, we have to be fair, so in the other vein, life without parole is also a possible penalty, so you haven't got your mind made up at all that all capital murder deserves [the] death penalty?" Even after such efforts by the prosecutor, this

witness repeatedly said that if appellant (or anyone) was guilty of murder (or rape), "I would burn them" or "be for the death penalty." As we pointed out in *Conley* v. *State*, 270 Ark. 886, 607 S.W.2d 328 (1980), a prospective juror's candid answers cannot be overcome merely by routine responses, and there is a point beyond which such a juror cannot be rehabilitated. We believe that situation occurred here and, accordingly, presents another reason why this cause must be reversed.[1]

■ The Supreme Court has said that a venireman should not be excluded unless he is irrevocably committed to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. *See Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 68 (1983) (quoting from *Davis* v. *Georgia*, 429 U.S. 122 (1976)). By the same token, a venireman who is automatically committed to imposing the death penalty is, for the defense, good cause for that juror's exclusion from service. Clearly, proper inquiry on voir dire in the matter would be to ask the veniremen if they would first consider and weigh the aggravating and mitigating circumstances involved when determining whether death or life imprisonment without parole should be imposed.

Before turning to appellant's other points, we mention briefly those we do not reach. Appellant argues that the jurors, in rendering appellant's sentence, erroneously found the appellant had presented no evidence of mitigating circumstances. If error occurred in this instance, such error may readily be avoided at the retrial and we need not discuss it.

Similarly, we need not reach appellant's contention that the trial court erred in permitting the jury to consider the aggravating circumstance that appellant committed capital murder for pecuniary gain. Appellant presents a two-pronged argument: (1) the jury, which determined appellant's guilt at the original trial, also found that the murder the appellant committed was not for pecuniary gain, and appellant urges that to allow another jury,

---

[1] We note the appellant peremptorily excused the veniremen discussed here, but appellant preserved his record on this point by showing an objectionable juror was later forced upon him because he had exhausted all his peremptory challenges. *Cf. Stephens* v. *State*, 277 Ark. 113, 640 S.W.2d 94 (1982).

upon resentencing, to consider pecuniary gain as an aggravating circumstance violates the principle of double jeopardy; and (2) citing *Collins* v. *Lockhart*, 754 F.2d 258 (8th Cir.), *cert. denied*, 106 S.Ct. 546 (1985), appellant argues his conviction was for robbery-murder, a crime that included pecuniary gain as an element, and he suggests that if the court permits the State to prove the aggravating circumstance of murder for pecuniary gain for sentencing purposes, the court improperly permits the double counting of one aspect of the evidence. Because this cause is reversed on other grounds and three other aggravating circumstances remain available to the State, we need not presume or anticipate that this issue will arise at the resentencing trial.

Appellant does attack one of the other remaining three aggravating circumstances, and we do dispose of that argument since we conclude it is wholly without merit. The jury found the appellant committed capital murder for the purpose of avoiding or preventing an arrest or effecting an escape from custody—an aggravating circumstance under Ark. Stat. Ann. § 41-1303(5). Appellant contends this circumstance is vague and overbroad as applied to the facts of this case. We consider this contention spurious in view of the overwhelming evidence that the appellant and his accomplices repeatedly shot their victims during the robbery while they laid helplessly on the floor of the store. One victim, Harold Goacher, testified the appellant and his accomplices asked if there was a room in which they could lock up their victims and when they were told no, Goacher said, "they turned around and said well, hell, we were (sic) just going to have to do away with them because if they get loose they will burn us." Unquestionably, the record supports the conclusion the appellant and his cohorts intended to kill their victims in order to avoid identification, apprehension, arrest and conviction for the robbery.[2]

Appellant next argues the unconstitutionality of Ark. Stat. Ann. § 41-1358 (Supp. 1985), contending that its retroactive

---

[2] Appellant also contends on appeal that it was error to permit the State to prove this aggravating circumstance because it was not found by the jury in his co-defendant's sentencing trial. Although he raised this issue below, we find nothing in the record, nor does he offer any citation of authority, to support his argument.

application here violates (1) the *ex post facto* clause, (2) the equal protection clause and (3) the double jeopardy prohibition. He argues further that the provision is a special law forbidden by Ark. Const. art. 5, § 24.

Section 41-1358 provides that a capital case is remanded to the court where the defendant was originally sentenced when a death sentence is vacated, and the prosecutor may move the trial court to impose a life sentence without parole or to impanel a new sentencing jury. Appellant claims that, prior to § 41-1358 (enacted as Act 546 of 1983), he would have been allowed by law, when a penalty phase error occurred, to a reduction in sentence to life without parole or a retrial as to both the guilt and any resulting sentencing phase. On this point, appellant primarily relies upon *Miller* v. *State*, 280 Ark. 551, 660 S.W.2d 163 (1983). The State, in its argument, correctly distinguishes *Miller* from the instant case but the significant distinction is that this cause involves a remand by the federal court to the state trial court for resentencing, not a retrial on the guilt issue. Aside from such differences, the Supreme Court, in *Dobbert* v. *Florida*, 432 U.S. 282 (1977), held that a procedural change in a state's death-sentencing law is not an *ex post facto* violation, nor does such a change deny a defendant the equal protection of the laws. In *Dobbert*, the Court concluded that the newly-enacted law there simply altered the methods employed in determining whether the death penalty was to be imposed and no change occurred regarding the quantum of punishment attached to the crime. The same can be said for the situation here. The crime for which appellant was charged, the punishment prescribed for it, and the quantity or degree of proof necessary to establish his guilt, all remain unaffected by § 41-1358. In sum, the State's position is in no way enhanced by § 41-1358, since it may not, under that new law, seek any greater penalty or punishment against the appellant for the crime he committed than that which was available under the prior law.

Appellant further urges § 41-1358 permitted the State at the·resentencing trial to present additional evidence not presented at the original trial; this, he suggests, violates the double jeopardy prohibition under the fifth amendment. In this connection, Jerry Lockridge, one of the robbery victims, testified at the resentencing trial, but had not testified at appellant's first

trial because Lockridge was in Europe at the time. A similar question of double jeopardy to the one presented here was considered in *United States* v. *Shotwell Mfg. Co.*, 355 U.S. 233 (1957). The Court, in language that is particularly instructive here, said:

> It is undeniable, of course, that upon appellate reversal of a conviction the Government is not limited at a new trial to evidence presented at the first trial, but is free to strengthen its case in any way it can by the introduction of new evidence.

355 U.S. at 243.

We are unaware of any reason why the State should be precluded from introducing additional relevant evidence on remand at a resentencing trial, especially when appellant's guilt already has been established and when appellant has in no manner shown or demonstrated prejudice that would result from the admission of such evidence.

Finally, appellant asserts Ark. Const. art. 5, § 24 prohibits the General Assembly from passing any local or special law changing the venue in criminal cases, and the General Assembly, appellant says, did just that here since § 41-1358 effectively requires this case to be remanded to Prairie County and not Arkansas County, where the crime was committed in 1975. Appellant's argument is far afield since the parties, themselves, agreed to a venue change to Prairie County when this cause was originally tried. Thus, § 41-1358 had nothing to do with fixing venue in this matter; instead, it merely reinvests venue for resentencing purposes in the county the parties agreed on in the first instance.

Next, appellant's counsel argues the trial court erred in the application of Ark. Stat. Ann. § 43-2419 (Repl. 1977) which provides for fees for attorneys representing indigents in criminal matters. Counsel, without offering sufficient reason or argument, requests that this court strike the $1,000.00 limitation provided under § 43-2419 as being a violation of due process and of appellant's right to the effective assistance of counsel. We reject appellant's request to reach the question concerning the constitutionality of § 43-2419, but we do recognize counsel's entitlement

to the maximum award under that provision. Thus, because the trial court allowed only $650.00 for the actual trial on resentencing, we direct the trial court to award an additional amount in the sum of $350.00.

■■ Appellant raises two additional points we recently addressed and decided in *Duncan v. State*, 291 Ark. 521, 721 S.W.2d 653 (1987), *viz.*, that Arkansas's sentencing laws for capital murder are death-mandatory provisions prohibited by *Woodson v. North Carolina*, 428 U.S. 280 (1976), and that the prosecutor is not entitled to a second closing argument under such sentencing laws. In *Duncan, supra*, we rejected the contention that Arkansas's statutory scheme provides for a mandatory death penalty when the jury finds the aggravating circumstances outweigh mitigating circumstances. *See* Ark. Stat. Ann. §§ 41-1301 to 41-1304. As we pointed out there, the jury, irrespective of its findings under these provisions, can still return a life verdict without parole simply by rejecting the death penalty. *See also Hill v. State*, 289 Ark. 387, 713 S.W.2d 233 (1986). We also held in *Duncan, supra*, that the prosecutor had the right to close the argument in the penalty phase because the State had the burden of proof. Because we have already disposed of these points in *Duncan, supra*, no further discussion is required.

Appellant concludes his argument for reversal of this cause by listing a mixture of issues captioned "other claims." None of these claims have merit.

■ Appellant first argues that he was prejudiced because he was led into the courthouse in handcuffs. To note the obvious, appellant's case was one of resentencing, only, and the jury was quite aware that appellant was guilty of capital murder since that was the very crime for which the jury was convened to impose a penalty. We fail to see how prejudice would result from a juror's view of appellant in handcuffs when that juror already knows the appellant had been convicted of murder nearly nine years earlier. As was said by the court in *United States ex rel. Stahl v. Henderson*, 472 F.2d 556 (5th Cir.) *cert. denied*, 411 U.S. 971 (1973), "No prejudice can result from seeing what is already known." *See also Glick v. State*, 286 Ark. 133, 689 S.W.2d 559 (1985).

■ Next, appellant contends the prosecutor erred in

referring to himself as representing "the people" and arguing to the jury that the death penalty is a deterrence and making other remarks appellant considers were designed to prejudice his case. Appellant submits no case authority and little argument to convince us these matters were errors, requiring the reversal of this cause. Neither do we find merit in appellant's expressed attempt to preserve his argument that death-qualified juries are unconstitutional since that issue has been decided against him. *Lockhart* v. *McCree*, ___ U.S. ___, 106 S.Ct. 1758 (1986). The same can be said for his contention that the death penalty is cruel and unusual punishment. *Gregg* v. *Georgia*, 428 U.S. 153 (1976) and *Fairchild* v. *State*, 284 Ark. 289, 681 S.W.2d 380 (1984).

As previously mentioned, we reverse and remand for resentencing consistent with the directions and holdings set out herein.

HICKMAN, J., concurs.

DARRELL HICKMAN, Justice, concurring. I agree with the majority decision; we have no alternative but to reverse this case. However, I would go further and address the question raised by *Collins* v. *Lockhart*, 754 Fed. 258 (8th Cir.) cert. denied ___ U.S. ___, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985). I would not follow the rationale of that decision which has been rejected by other federal and state courts. *Glass* v. *Blackburn*, 791 F.2d 1165 (5th Cir. 1986); *Wingo* v. *Blackburn*, 783 F.2d 1046 (5th Cir. 1986); *Evans* v. *Thigpen*, 631 F. Supp. 275 (S.D. Miss. 1986); *State* v. *Williams*, 317 N.C. 474, 346 S.E.2d 405 (1986). The Eighth Amendment to the United States Constitution simply says "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Circuit Court of Appeals has indeed strayed a long way from that principle by finding that simply because an element of capital felony murder will be an aggravating circumstance, such a circumstance makes the death penalty unconstitutional.

If a state decides to limit the death penalty, as Arkansas has done to those who commit murder during the commission of certain felonies, in this case robbery, that is not such an arbitrary, broad category of criminal misconduct that fails or should fail the guidelines laid down by the United States Supreme Court. *Furman* v. *Georgia*, 408 U.S. 238 (1972); *Gregg* v. *Georgia*, 428

U.S. 153 (1976); *Lockett* v. *Ohio*, 438 U.S. 586 (1978). A jury may still decide not to impose the death penalty.

It is ironical that the few death penalty cases which will slip through the interminable appeal process will mean that those defendants are simply unlucky. The reason for their fate will not be because they deserve the death penalty more than the great majority who are spared that penalty, but because there are no technical reasons left to throw out the death penalty in their case. Is this a fair way to decide who will get the death penalty? It seems a far more freakish way to impose the death penalty than to leave that decision to juries within reasonable guidelines.