Edward Charles PICKENS *v.* STATE of Arkansas

CR 89-94                                        783 S.W.2d 341

Supreme Court of Arkansas
Opinion delivered February 5, 1990
[Rehearing denied February 20, 1990.]

*Jeff Rosenzweig*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. For the third time, a jury has sentenced Edward Charles Pickens to die for a murder committed in 1975, and for the third time we are hearing his appeal. We affirmed his original conviction and sentence in *Pickens* v. *State*, 261 Ark. 756, 551 S.W.2d 212 (1977), *cert. denied*, 435 U.S. 909

(1978). In 1983, the Eighth Circuit vacated the death sentence due to ineffective assistance of counsel in the penalty phase of the trial. *Pickens* v. *Lockhart*, 714 F.2d 1455 (8th Cir. 1983). A resentencing jury was empanelled and Pickens again was sentenced to death. We reversed in *Pickens* v. *State*, 292 Ark. 362, 730 S.W.2d 230, *cert. denied*, ___ U.S. ___, 108 S.Ct. 269 (1987), finding error in the limitation of mitigating circumstances presented to the jury. Yet another resentencing jury was empanelled, this time in Arkansas County at the defendant's request, and Pickens was sentenced to death for the third time. He now appeals from that sentence, raising numerous issues. Finding no reversible error, we affirm.

The primary issue on appeal is whether AMCI 1509 is unconstitutional. The instruction and accompanying forms, which are used to determine the sentence in capital cases, tell the jury that in no event may a sentence of death be imposed unless three findings are unanimously made: 1) that one or more aggravating circumstances exist beyond a reasonable doubt; 2) that the aggravating circumstances outweigh beyond a reasonable doubt any mitigating circumstances found to exist; and 3) that the aggravating circumstances justify beyond a reasonable doubt the sentence of death. It is the third finding with which the appellant takes issue. He claims its language should have been altered so the jury might weigh the mitigating circumstances at all phases of deliberation. He proffered the following instruction:

> That the aggravating circumstances *when weighed against the mitigating* justify beyond a reasonable doubt the sentence of death. (Emphasis added to show modification.)

■ The judge rejected the proposed instruction, and rightfully so. There is no need to weigh the mitigating circumstances again in the third finding. AMCI 1509 takes the jury through a three-step process. The jury may not proceed to the third step unless it has already decided that the aggravating circumstances outweigh the mitigating. The third finding allows the jury to reject the death penalty *in spite of* the fact that the aggravating circumstances outweigh the mitigating. *See Ruiz* v. *State*, 299 Ark. 144, 772 S.W.2d 297 (1989); *Clines* v. *State*, 280 Ark. 77, 656 S.W.2d 684 (1983), *cert. denied*, 465 U.S. 1051 (1984).

■ We also note that the judge agreed to instruct the jury

"if you make those findings you may [rather than will] impose the death penalty." This modification was favorable to the defendant, but it was not legally necessary. *See Ruiz* v. *State, supra.*

The second argument concerning AMCI 1509 is based on the recent United States Supreme Court case of *Mills* v. *Maryland*, 486 U.S. 367, 108 S.Ct. 1860 (1988). The Court held there was a defect in the language of Maryland's sentence determination forms. Section II of the forms reads as follows:

> Based upon the evidence, we unanimously find that each of the following mitigating circumstances which is marked "yes" has been proved to exist.

There follows a list of seven mitigating circumstances with blanks beside each marked "yes" or "no." Then in the determination of sentence section, the instruction reads as follows:

> If Section II was completed and all of the answers were marked "no" then enter death.

The Court found this language implied that if the jury did not unanimously agree on the existence of any single mitigating circumstance, it must impose the death sentence. There was a substantial probability that the jurors did not consider all mitigating evidence.

The appellant claims there is no meaningful difference between the Maryland and Arkansas sentencing forms, but they are, in fact, very different. Our Form 2, which accompanies AMCI 1509, expressly allows the jury to list mitigating circumstances which were found by some, though not all, of its members. Form 3 then allows the jury to determine if the aggravating circumstances outweigh *any* mitigating circumstances. Nothing in the forms indicates to the jury that a mitigating circumstance must be found unanimously before it may be considered in the weighing process. The potential for misunderstanding is not present in the Arkansas forms as it is in the Maryland forms. Therefore, we reject the appellant's argument.

The appellant's next major argument concerns the jury selection process. Citing *Witherspoon* v. *Illinois*, 391 U.S. 510 (1968), he claims it was error to exclude two venirepersons for cause since they did not make it unmistakably clear that they

would automatically vote against the death penalty if selected.

The standard for determining if a venireperson should be excused for cause in this situation is no longer whether the venireperson makes it unmistakably clear that he or she would automatically vote against the death penalty. Instead, the court should decide if the juror's views would prevent or substantially impair the performance of his or her duties as a juror in accordance with the instructions and oath. It is no longer necessary that the juror's bias be shown with unmistakable clarity. Instead, great deference is given to the trial judge who sees and hears the potential jurors. The Court in *Wainwright* v. *Witt*, 469 U.S. 412 (1985), clarified its holding in *Witherspoon* to impose this more flexible standard, as we have recognized. *See Williams* v. *State*, 288 Ark. 444, 705 S.W.2d 888 (1986).

The trial judge committed no error in excusing the jurors in this case. Venireperson Lyndell Robinson waivered back and forth between saying she "probably could" impose the death penalty and that she did not believe in the death penalty. The judge finally excused her on his own motion. His decision was based on her inability to give a consistent answer to the death penalty question and on her response which indicated she would be led by other members of the jury rather than make her own decision.

Venireperson Rosemary Horner started out saying she was against the death penalty. When asked if she could impose the penalty, she replied "I guess I could if I had to," but that she didn't really want to. Later she said she "guessed" she could consider it and could keep an open mind "if I had to." She was asked if she would refuse to vote for the death penalty no matter what and replied "no," and finally said she could vote for the death penalty "if I had to." The trial court was concerned that Mrs. Horner's continuous response of "if I had to" indicated a person that might not be able to consider the death penalty even if the evidence justified it. Giving considerable deference to the trial judge's ability to see and hear Mrs. Horner, we hold her excusal was not error.

Next, the appellant argues that he was forced to use peremptory challenges on nine venirepersons when the judge refused to excuse them for cause. In deciding whether a defend-

ant's right to an impartial jury has been violated, the focus should not be on a juror who was peremptorily challenged, but on the persons who actually sat on the jury. *Ross* v. *Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273 (1988). The appellant does not contend that any persons who sat on the jury should have been excluded for cause. He received the impartial jury to which he is entitled and only complains of the loss of peremptory challenges. Under *Ross* v. *Oklahoma*, which was decided several months before this trial took place, that is not reversible error. *See also Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988); *Watson* v. *State*, 289 Ark. 138, 709 S.W.2d 817 (1986).

The appellant claims next that his death sentence should be set aside because the jury ignored evidence of mitigating circumstances. The jury did find that one mitigating circumstance existed, which was that Pickens had suffered an unstable childhood and violence in his teenage years. However they did not find evidence of youth and domination by another person or of any accomplishments since incarceration, despite the fact that Pickens presented testimony on these matters.

Pickens was twenty-one years old in 1975 when he and two other men robbed a grocery store in Casscoe. Nine people who were in the store at the time were crowded into a small room while the robbery took place. When Pickens and the others determined that there was no room in which they could lock up their victims, they opened fire on them and shot them repeatedly as they lay helplessly on the floor. Two people were killed and five others were seriously injured.

At the sentencing hearing, one of the victims, Jerry Lockridge, testified that Pickens fired first, shooting Wes Noble at point blank range. Other shots, fired by Pickens or the others, then followed in rapid succession until the gun was emptied. The gun was then reloaded and at least one more shot was fired. Lockridge said, "during the entire time I was there, . . . Mr. Pickens was the individual doing the talking . . . he's the one that told me to lay on the floor . . . he was the one that did the talking to Mr. Goacher when they found the money." Lockridge said he perceived Pickens as the one in control of the situation. Another victim, James Weatherly, said Pickens was not acting on the instructions of anyone. From this evidence, the jury could

reasonably have concluded that the mitigating circumstance of youth and domination by another person did not exist.

Pickens also presented evidence that he had corresponded with various young people since his imprisonment. However, the state's evidence showed that Pickens had once enclosed a pamphlet in a letter to one student soliciting funds for his defense. The jury could well have found that these efforts by Pickens were insincere and self-serving.

In the next issue, the appellant argues that an improper remark made by the prosecutor during opening statement should have resulted in a mistrial. The prosecutor described the victims by age and race:

> And when they were through, Wes Noble, a seventy-six year old black man laid dead; Jimmy Scherm, thirty-two year old white man laid dead; Thelma Gunnell, a sixty-two year old grandmother, white woman, lay raped twice, shot in the neck; Jerry Lockridge, twenty-seven year old white man lay shot in the neck. . . .

The appellant claimed the prosecutor's purpose in referring to the races of the victims was to inflame the jury. He asked for a mistrial or that the jury be admonished. After a discussion with the court, he agreed that an admonition would draw undue attention to the remarks. The prosecutor denied his remarks were intended as inflammatory and he promised to employ no further racial connotations. The court readily agreed the subject should be avoided and denied the mistrial motion.

Racial descriptions are irrelevant in almost every instance in a trial. The race of a victim simply should not be mentioned to the jury unless necessary, but we do not find the remarks here warranted a mistrial. A mistrial is a drastic remedy only to be resorted to when there has been error so prejudicial that justice cannot be served by continuing the trial. *Brewer* v. *State*, 269 Ark. 185, 599 S.W.2d 141 (1980). Since the trial court did not abuse its discretion in denying the mistrial and there was no manifest prejudice to the appellant, we will not reverse. *Williams* v. *State*, 294 Ark. 345, 742 S.W.2d 932 (1988).

Two other issues involve the allegation of prosecutorial misconduct. The first involves the prosecutor's

closing argument in which he implied that Pickens had fabricated evidence of an abusive upbringing. Pickens suffered no prejudice since the jury unanimously found that this mitigating circumstance existed.

The second involves an objection made by the state during the testimony of Elaine Phillips, a witness on behalf of Pickens. Mrs. Phillips was a junior high school teacher who told the jury that some of her students had corresponded with Pickens. She had begun to testify about the effect of Pickens' letters on the students when the state objected, saying Mrs. Phillips' testimony on that point was irrelevant and such testimony should come from the students themselves. Pickens claims the objection was made in bad faith because Ark. Code Ann. § 5-4-602(4) (1987) allows mitigating evidence to be presented regardless of its admissibility under the rules of evidence in criminal trials. We have held that this statute does not open the way for irrelevant evidence. *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 284, *cert. denied*, 459 U.S. 882 (1982). There was a *bona fide* basis for the prosecutor's objection, unlike the case of *Timmons* v. *State*, 286 Ark. 42, 688 S.W.2d 944 (1985) which is cited by the appellant.

Pickens also presents six evidentiary issues. First, he claims the state should not have been allowed to admit certain evidence from the guilt phase of his first trial at his resentencing proceeding because his counsel at that trial was found ineffective. The Eighth Circuit in *Pickens* v. *Lockhart, supra,* did not find counsel ineffective in the guilt phase of the first trial, only in the penalty phase. Therefore it was not error to admit the evidence.

Second, Pickens complains that the state attempted to introduce evidence that he killed Jimmy Scherm, one of the victims who died in the robbery (Pickens had only been found guilty of killing Wes Noble). The basis of Pickens' argument is that the state introduced the evidence to prove the aggravating circumstance of commission of a prior violent felony. Ark. Code Ann. § 5-4-604(3) (1987). The prosecutor did not argue Scherm's death to the jury as an aggravating circumstance. The only evidence that Pickens killed Scherm came from the victims' general testimony of the crime. The state may prove the underlying facts of the murder in the resentencing proceeding. *Ruiz* v. *State, supra.*

■ Third, Pickens presented the testimony of Father Louis Franz who spoke of the good works and self-improvement Pickens had undertaken while in prison. On cross examination, the state asked Father Franz if he had once intervened in a case to prevent the death penalty from being carried out, even though it was against the wishes of the convicted man. The state was referring to *Franz* v. *State*, 296 Ark. 181, 754 S.W.2d 839 (1988) in which Father Franz, as next friend, tried to appeal the death sentence of Ronald Gene Simmons after Simmons waived his appeal. Pickens objected to this reference to the Simmons case, but the trial court allowed the question. The state was attempting to show that Father Franz was so unalterably opposed to the death penalty that he would go to great extremes to keep it from being carried out. Wide latitude is allowed on cross examination to elicit facts impeaching the credibility of a witness and the scope of that examination is largely within the discretion of the trial judge. *Alexander* v. *State*, 257 Ark. 343, 516 S.W.2d 368 (1974).

■ The fourth evidentiary issue also concerns the cross examination of a witness. Pickens presented the testimony of Frank King who testified about prison conditions for death row inmates. On direct, Pickens asked King if death row prisoners were allowed in the general prison population to which King replied no. Some of King's testimony left the impression that it was inhumane to house death row inmates in a restricted area. On cross, the prosecutor asked King, "You advocate capital murderers having access to the general prison population?" Pickens objected and asked for a mistrial. The question was proper and was responsive to matters elicited on direct examination.

■ Fifth, Pickens claims that a witness was allowed to mention his juvenile record in Michigan. Dr. Brad Fisher, a psychologist, testified that one of Pickens' problems as a youth was lack of a structured environment. The state, attempting to show that Pickens had benefit of structure by incarceration in juvenile facilities, asked Dr. Fisher how many times Pickens had been incarcerated. Dr. Fisher replied twice as a juvenile and once as an adult. The crime for which Pickens was incarcerated as a juvenile in Michigan was never mentioned, nor was it argued as an aggravating circumstance. The judge's decision to allow this line of questioning was correct.

Finally, Pickens claims that certain testimony elicited from his mother left the impression that he had participated in a murder in Michigan. He made no motion to have the testimony stricken, did not ask that the jury be admonished, nor has he shown the testimony was so prejudicial as to warrant a mistrial. Therefore, he cannot obtain reversal on this point. *Birchett* v. *State*, 294 Ark. 176, 741 S.W.2d 267 (1987).

Several other issues raised by Pickens have already been decided adversely to him either by this court or the United States Supreme Court. He claims the exclusion of jurors who are unable to impose the death penalty violates his right to a jury composed of a fair cross section of the community. This argument was rejected in *Lockhart* v. *McCree*, 476 U.S. 162 (1986). He questions the propriety of the state's presenting a rebuttal witness and a second closing argument during a sentencing proceeding. In *Pickens* v. *State*, 292 Ark. 362, 730 S.W.2d 230 (1987), we held it was proper for the state to have the last closing argument because it has the burden of proving the aggravating circumstances outweigh the mitigating. We did not address the issue of rebuttal testimony, but the same reasoning applies. In order to effectively discharge its burden, the state must be empowered to rebut mitigating evidence. *See State* v. *DePew*, 38 Ohio St. 3d 275, 528 N.E.2d 542 (1988), *cert. denied*, ___ U.S. ___, 109 S.Ct. 1099 (1989). Pickens claims it is unconstitutional to empanel a jury for the purpose of sentencing alone; that the state should not be allowed to introduce evidence from the first trial at the resentencing hearing; and that it is not proper to allow the state to present evidence at the resentencing hearing that was not presented at the first trial. These arguments have been rejected by this court. *See Ruiz* v. *State, supra; Pickens* v. *State*, 292 Ark. 362, 730 S.W.2d 230 (1987).

Finally, Pickens claims, as he did in his last case, that there was not sufficient evidence to allow the jury to consider the aggravating circumstance of capital murder committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody. Ark. Code Ann. § 5-4-604(5) (1987). Since the jury did not find that this circumstance existed, Pickens was not prejudiced. *Hill* v. *State*, 289 Ark. 387, 713 S.W.2d 233 (1986), *cert. denied*, 479 U.S. 1101 (1987).

The last issue we reach concerns the constitutionality of Ark. Code Ann. § 16-92-108(2)(b) (1987) which sets a $1,000.00 fee limit for attorneys representing indigents in capital cases. First we should point out that this case did not involve a full trial but a resentencing proceeding. Pickens' attorney submitted a motion to the trial court asking for a fee of at least $8,480.00. The trial court agreed the statutory limit is unconstitutional and awarded a $1,700.00 fee. Appellant's counsel appeals because the award is inadequate; the state cross-appeals claiming the $1,000.00 limit should have been observed. *Amicus curiae* briefs have been filed by the Arkansas Bar Association and by the Arkansas and National Associations of Criminal Defense Lawyers.

In *State* v. *Ruiz*, 269 Ark. 331, 602 S.W.2d 625 (1980), we held the attorney fee statute was not a "taking" of an attorney's property without due process of law. As appellant points out, several jurisdictions that were once in accord with *Ruiz* have recently changed their positions. *See, e.g., Makemson* v. *Martin County*, 491 So.2d 1109 (Fla. 1986), *cert. denied*, 479 U.S. 1043 (1987); *State ex rel. Stephan* v. *Smith*, 242 Kan. 336, 747 P.2d 816 (1987); *Jewell* v. *Maynard*, 383 S.E.2d 536 (W.Va. 1989). Each of these cases involved a lawyer who was appointed by the court to represent an indigent defendant. Appellant's counsel volunteered his representation in this case; he was not forced to represent Pickens. In fact, he represented Pickens before in the resentencing ordered by the Eighth Circuit. He has made no case for a due process argument.

In addition to his due process argument, appellant claims the statute is unconstitutional because it infringes on the inherent power of the trial court to regulate the practice of law. The legislature does not invade the court's power by setting a limit on attorney compensation. *See Makemson* v. *Martin County, supra.*

Finally, it is argued that the fee limit endangers the appellant's right to effective assistance of counsel. There is nothing in this case to indicate that the fee limit affected counsel's representation of the appellant. Counsel quickly pointed out in oral argument that Pickens had received effective assistance in this proceeding. We readily agree that appears to be the case, so that argument must fail.

Whatever the trend may be to hold such fee limits unconstitutional, this is not the case in which we will reconsider the issue. We direct the trial court to reduce counsel's fee to $1,000.00.

We are required in a death case to compare the crime with those of others receiving the death sentence. We have done so in this case and find the death sentence was appropriate.

We have reviewed all objections decided adversely to the appellant and have found no reversible errors. Ark. R. Sup. Ct. Rule 11(f).

Affirmed on appeal. Reversed on cross-appeal.