Edward Charles **PICKENS**, Appellant,

v.

**A.L. LOCKHART**, Director, ADC, Appellee.

No. 92–3135.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1993.

Decided Sept. 24, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 29, 1993.

Jeff Rosenzweig, Little Rock, AR, argued, for appellant.

Olan W. Reeves, Little Rock, AR, argued, for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and HAMILTON,* District Judge.

McMILLIAN, Circuit Judge.

Petitioner Edward Charles Pickens appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Arkansas denying his second petition of writ of habeas corpus. *Pickens v. Lockhart,* 802 F.Supp. 208 (E.D.Ark.1992). For reversal petitioner argues the district court erred in (1) holding that habeas review of his coerced confession claim was procedurally barred, (2) denying his due process claim that he was improperly denied his peremptory challenges, (3) denying his claim that a prospective juror was improperly excluded because of her views against the death penalty, (4) denying his claim that one of the prosecutors told a key state witness to commit perjury, (5) holding the verdict forms did not require unanimity on mitigating circumstances, (6) holding that the state resentencing statute did not violate the *ex post facto* clause, (7) denying his due process claim that the prosecutor made improper statements during the opening and closing arguments, (8) denying his due process claim that a witness was improperly impeached, and (9) denying his claim that the jury improperly ignored evidence of certain mitigating circumstances and that his death sentence was disproportionate to other death sentences. For the reasons discussed below, we affirm the judgment of the district court.

BACKGROUND FACTS

Petitioner was convicted of capital felony murder in 1976 and has been on death row for almost 18 years. This is his second federal habeas corpus petition. The underlying facts are not disputed. The following statement of facts is taken from this court's earlier opinion. *Pickens v. Lockhart,* 714 F.2d 1455, 1459 (8th Cir.1983) (Lay, C.J.).[2]

On October 20, 1975, in the afternoon, petitioner, Antonio Clark and Sherwood Gooch entered a rural grocery store in Casscoe, Arkansas, armed with a sawed-off shotgun and a .22 caliber pistol. During the robbery of the store owner, the female store clerk and seven customers, two of the robbers sexually assaulted the female store clerk. After the robbers made all of the victims lie face down on the floor, they shot them. Seven of the victims were shot in the back of the head with the pistol; several of the victims were shot a second time after the shooter reloaded the pistol. Two of the victims died, including Wesley Noble, who had been shot a second time. Petitioner and Clark were dark-complexioned black men; however, Gooch was a light-complexioned, "Spanish-appearing" man. The store owner implicated petitioner and Clark in the shootings. He testified that the dark-complexioned men did the shooting, not the light-complexioned man. Another witness testified, however, that petitioner had the shotgun during the robbery. The female store clerk testified that petitioner had the pistol; however, she did not know whether he fired the shots.

Later that day Memphis police, acting on a tip, chased and stopped a stolen vehicle carrying petitioner, Clark and Gooch. Although the occupants of the car fled, petitioner and Gooch were quickly apprehended. The car contained items taken during the grocery store robbery. Petitioner was found wearing the female store clerk's wedding ring when he was arrested. When petitioner was interrogated by Memphis and Arkansas police officers, he admitted to participating in the grocery store robbery, but he identified Clark as the shooter and denied that he fired any of the shots. Petitioner was convicted of capital felony murder and sentenced to

---

* The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

2. *See also Pickens v. State,* 261 Ark. 756, 551 S.W.2d 212 (1977) (original conviction and sentence), *cert. denied,* 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978).

death. Proceedings on direct appeal and for state and federal post-conviction relief followed.

## LITIGATION HISTORY

The following litigation history is taken from the district court's memorandum opinion. *Pickens v. Lockhart*, 802 F.Supp. at 210. On direct appeal the state supreme court affirmed the conviction and sentence. *Pickens v. State*, 261 Ark. 756, 551 S.W.2d 212 (1977), *cert. denied*, 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978). Post-conviction relief was also denied. *Pickens v. State*, 266 Ark. 486, 586 S.W.2d 1 (1979), *cert. denied*, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). Afterwards petitioner filed his first habeas corpus petition in federal district court, alleging some twenty claims for relief. The district court denied this petition. *Pickens v. Lockhart*, 542 F.Supp. 585 (E.D.Ark.1982) (first habeas petition). On appeal this court refused to set aside the conviction but ordered a new penalty phase proceeding because trial counsel was ineffective for failing to present evidence of mitigating circumstances and for failing to object to an erroneous instruction. *Pickens v. Lockhart*, 714 F.2d at 1465–69.

The first resentencing proceeding ended in a mistrial because, after the voir dire examination had begun, one of the key state's witnesses at the original trial, Harold Goacher, the store owner, informed special prosecutor Jack Lassiter that everything that he had testified petitioner had done during the robbery, Clark did, and everything that he had testified Clark had done, petitioner did. Petitioner moved for a hearing to place Goacher under oath to explore the matter, but the state trial court refused. Petitioner then filed applications for writs of mandamus, certiorari and error coram nobis in the state supreme court. All these writs were denied. *Pickens v. State*, 284 Ark. 506, 683 S.W.2d 614 (1985). In 1985 the resentencing jury sentenced petitioner to death. The state supreme court reversed because the state trial court had erroneously limited the proof of mitigating circumstances to a time period before the murder was committed. *Pickens v. State*, 292 Ark. 362, 730 S.W.2d

230, 232, *cert. denied*, 484 U.S. 917, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

In 1988 a second resentencing jury again imposed the death penalty. The state supreme court affirmed. *Pickens v. State*, 301 Ark. 244, 783 S.W.2d 341, *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3257, 111 L.Ed.2d 766 (1990). Post-conviction relief was denied. *Pickens v. State*, No. CR 89–94, 1990 WL 210641 (Ark.Sup.Ct. Dec. 17, 1990) (per curiam), *cert. denied*, —— U.S. ——, 111 S.Ct. 2044, 114 L.Ed.2d 128 (1991). Thereafter, petitioner filed his second habeas corpus petition. The district court held an evidentiary hearing and denied habeas relief. *Pickens v. Lockhart*, 802 F.Supp. at 211–19. This appeal followed.

## COERCED CONFESSION

Petitioner first argues that the district court erred in holding that habeas review of his coerced confession claim was procedurally barred. He argues that his confession, which was admitted against him, was coerced by certain racial threats made by one of the interrogating police officers, R.D. Oliver, now deceased. Petitioner argues that his claim of coercion is supported by the 1984 affidavit of special prosecutor Lassiter in which Lassiter stated that R.D. Oliver had admitted coercing petitioner's confession. The district court did not reach the merits of petitioner's coerced confession claim and held that habeas review of petitioner's coerced confession claim was procedurally barred either because it was a successive claim, *id.* at 224 (order of May 22, 1992), or, in the alternative, an abuse of the writ, *id.* at 225 (order of May 22, 1992). Petitioner argues the Lassiter affidavit is newly discovered evidence which excused his failure to raise this claim in his first habeas petition in 1981. We disagree.

We agree with the district court that habeas review of petitioner's coerced confession claim is procedurally barred. Rule 9(b) of the Rules Governing § 2254 Cases permits dismissal of a successive petition either if it fails to allege a new claim and the prior determination was on the merits or if the second petition alleges a new claim which was available at the time of the first petition. We agree with the district court that peti-

tioner's coerced confession claim was a successive claim and not a "new" claim. In his first petition petitioner alleged that his confession was not voluntary because his fifth amendment right against self-incrimination and his sixth amendment right to counsel were violated when an interrogating officer failed "to scrupulously adhere to [his] assertion of his right under *Miranda* to talk to an attorney." *Id.* at 223 (order of May 22, 1992), *citing* Respondent's Exhibit G at 14–15.. This claim was resolved on the merits. In the present petition, which is petitioner's second petition, petitioner alleged that his confession was not voluntary because one of the interrogating officers threatened him. Even though the underlying facts were different, the legal basis for both coerced confession claims was the same—violation of the fifth amendment by an interrogating officer. *Id.* at 224 (order of May 22, 1992).

■ A successive claim may be relitigated if the "ends of justice," such as new facts, so require. *Sanders v. United States*, 373 U.S. 1, 15–17, 83 S.Ct. 1068, 1077–78, 10 L.Ed.2d 148 (1963). Petitioner argues the Lassiter affidavit is newly discovered evidence which excused his failure to raise his claim that his confession was coerced by police threats in his first habeas petition. We agree with the district court that the Lassiter affidavit was not newly discovered evidence because petitioner knew of the factual basis for the claim at least by 1981, the year he filed his first habeas petition. "In fact, [petitioner] knew of the basis for the claim the day it arose because he was the person to whom the [threatening] remark by the interrogating officer was made." 802 F.Supp. at 224 (order of May 22, 1992).

The district court also held in the alternative that, even assuming petitioner's coerced confession claim was not successive but new, petitioner's failure to raise the claim in his first petition was an abuse of the writ. *Id.* at 225 (order .of May 22, 1992), *citing McCleskey v. Zant*, 499 U.S. 467, ———— ———, ———, 111 S.Ct. 1454, 1457–58, 1470, 113 L.Ed.2d 517 (1991) (analysis of abuse of writ). Petitioner argues the fact that the Lassiter affidavit was not available at the time he filed his first habeas petition constituted cause which excused his failure to raise his coerced confession claim in his first habeas petition. We disagree. We think the district court correctly held that the Lassiter affidavit is not newly discovered evidence because petitioner already knew of the factual basis for the claim when he filed his first habeas petition. Although petitioner could not have known about the Lassiter affidavit in 1981, petitioner "knew of the basis for the claim the day it arose because he was the person to whom the [threatening] remark by the interrogating officer was made." 802 F.Supp. at 225 (order of May 22, 1992).

PEREMPTORY CHALLENGES

■ Petitioner next argues that he was denied due process because he was denied the full complement of twelve peremptory challenges allowed under Arkansas law. Petitioner used nine peremptory challenges to remove prospective jurors whom, he alleges, the state trial court should have excused for cause during the 1988 resentencing proceeding. He argues that, if he had not been forced to exhaust his peremptory challenges in order to remove these prospective jurors, he would have peremptorily challenged two other jurors. Petitioner does not argue that any of the persons who ultimately sat on the jury should have been excused for cause; he complains only that he was forced to use peremptory challenges to cure what he argues were erroneous refusals by the state trial court to excuse jurors for cause.

We agree with the district court that petitioner was not denied due process because he was forced to use peremptory strikes to remove several prospective jurors whom the state trial court refused to excuse for cause. 802 F.Supp. at 215. The Supreme Court rejected this argument in *Ross v. Oklahoma*, 487 U.S. 81, 89–91, 108 S.Ct. 2273, 2278–80, 101 L.Ed.2d 80 (1988). In that case the defendant used one of his peremptory challenges to remove a juror whom the state trial court erroneously refused to excuse for cause under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) (*Witherspoon*). The defendant would have used that peremptory challenge to remove another juror. The Supreme Court rejected the defendant's arguments that the loss of a per-

emptory challenge violated his sixth amendment right to an impartial jury[3] and his fourteenth amendment right to due process. 487 U.S. at 85, 108 S.Ct. at 2276. The Court acknowledged that "the right to exercise peremptory challenges is 'one of the most important of the rights secured to the accused.'" *Id.* at 89, 108 S.Ct. at 2278, *citing Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) (further internal citation omitted). The Court noted, however, that

> [b]ecause peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. As such, the "right" to peremptory challenges is "denied or impaired" only if the defendant does not receive that which state law provides.

487 U.S. at 89, 108 S.Ct. at 2279 (citations omitted). Oklahoma law granted a capital defendant nine peremptory challenges, but the Supreme Court noted that grant was "qualified by the requirement that the defendant must use those challenges to cure erroneous refusals by the trial court to excuse jurors for cause." *Id.* at 90, 108 S.Ct. at 2279. The Court held that there was no violation of due process because there was "nothing arbitrary or irrational about such a requirement, which subordinates the absolute freedom to use a peremptory challenge as one wishes to the goal of empaneling an impartial jury." *Id.* The Court did not decide "the broader question whether, in the absence of Oklahoma's limitation on the 'right' to exercise peremptory challenges, a 'denial or impairment' of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to remove jurors who should have been excused for cause." *Id.* at 91 n. 4, 108 S.Ct. at 2280 n. 4. The Court also noted that no claim had been made that the trial court "repeatedly and

deliberately misapplied the law in order to force [the defendant] to use his peremptory challenges to correct these errors." *Id.* at 91 n. 5, 108 S.Ct. at 2280 n. 5.

Petitioner argues that his due process claim is the one reserved by the Supreme Court in footnote 4 in *Ross v. Oklahoma* because Arkansas does not limit the "right" to exercise peremptory challenges like Oklahoma does. We disagree. Like Oklahoma, Arkansas law requires the defendant to use peremptory challenges to cure erroneous refusals by the trial court to excuse jurors for cause. *See, e.g., Gardner v. State,* 296 Ark. 41, 60–61, 754 S.W.2d 518, 527–28 (1988) (in order to establish trial court erred in failing to excuse jurors for cause, defendant must show that, after exhausting all peremptory challenges, he was forced to accept a juror against his wishes). As required by Arkansas law, petitioner used his peremptory challenges to cure the state trial court's errors and consequently he retained fewer peremptory challenges to use as he wished. Nonetheless, petitioner received all that Arkansas law allowed him and, like the defendant in *Ross v. Oklahoma,* his due process claim must fail.

Petitioner also argues that his due process claim is the one reserved by the Supreme Court in footnote 5 in *Ross v. Oklahoma* because the state trial court systematically refused his valid challenges for cause and thus repeatedly and deliberately misapplied the law in order to force him to use his peremptory challenges to correct these errors. We have independently examined the voir dire testimony of the prospective jurors challenged for cause by petitioner. Even assuming some degree of difference of opinion on the merits of each challenge for cause, the record does not support petitioner's claim that the state trial court repeatedly and deliberately misapplied the law in order to force him to use his peremptory challenges to correct these errors.

---

**3.** The Supreme Court rejected the argument that "the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury" and emphasized that "[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to

achieve that result does not mean the Sixth Amendment was violated." *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988); *see also United States v. Cruz,* 993 F.2d 164, 168–69 (8th Cir.1993).

*WITHERSPOON* EXCLUDABLE

■ Petitioner next argues the district court erred in holding that prospective juror Rosemary Horner was a *Witherspoon* excludable. 802 F.Supp. at 215. Petitioner argues the state courts, and the district court, misread Horner's voir dire testimony and reviewed it out of context. He argues that at most her voir dire testimony indicated that she had "opinions" about the death penalty but that she could set them aside "if [she] had to."

■ "General objections to the death penalty or conscientious or religious scruples against the death penalty are not grounds for excusing a juror for cause." *Id.* at 214, *citing Witherspoon,* 391 U.S. at 520, 88 S.Ct. at 1776 (excuse for cause if juror would not consider imposing the death penalty). The constitutional standard is whether the prospective juror's views against the death penalty would prevent or substantially impair the performance of the juror's duties as a juror in accordance with the court's instructions and the juror's oath. *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); *Byrd v. Armontrout,* 880 F.2d 1, 9 (8th Cir.1989), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). The state trial and appellate courts applied this standard to petitioner's claim and concluded that Horner was excusable for cause because her "continuous response of 'if I had to' indicated a person that might not be able to consider the death penalty even if the evidence justified it." 783 S.W.2d at 345. The presumption of correctness for factual issues, 28 U.S.C. § 2254(d), applies to state trial and appellate court rulings on juror bias. *Wainwright v. Witt,* 469 U.S. at 429, 105 S.Ct. at 854. The record supports the state courts' characterization of Horner's voir dire testimony, and we agree with the district court that excusing Horner for cause did not violate petitioner's constitutional rights.

SUBORNATION OF PERJURY

As noted above, petitioner was tried for the murder of Wes Noble. At trial Goacher, the store owner, testified that petitioner and Clark did all the shooting. At the first re-sentencing proceeding Goacher changed his trial testimony and testified that everything that he had testified petitioner had done during the robbery, Clark did, including the shooting of Noble, and everything that he had testified Clark had done, petitioner did. Goacher claimed that he was told by special prosecutor Lassiter to testify that petitioner, not Clark, shot Noble and that Lassiter advised him to so testify in the presence of the other special prosecutor, Gary Isbell, who is now a state circuit judge. The district court found that, even though Goacher may have confused the actions of petitioner and Clark, Goacher did not intentionally commit perjury in the original trial and that special prosecutor Lassiter did not tell Goacher to testify petitioner shot Noble. 802 F.Supp. at 213–14.

■ Petitioner argues the district court's findings are clearly erroneous. Petitioner argues Goacher had no motive other than his guilty conscience to recant his trial testimony and that Goacher's claim that the special prosecutor told him to lie was "consistent with the political realities existing" at the time of the trial, particularly in light of the special prosecutor's failure to disclose the police officer's admission that he had threatened petitioner during interrogation.

The district court's findings were based on its assessment of the credibility of the witnesses. The special prosecutors and Goacher testified at an evidentiary hearing before the district court in August 1992. The district court specifically credited the testimony of the special prosecutors and discredited the testimony of Goacher. We hold the findings of the district court on this issue are not clearly erroneous and agree with the district court that there is no basis for setting aside petitioner's conviction on the ground that it was obtained on perjured testimony as a result of prosecutorial misconduct.

VERDICT FORMS

■ Petitioner next argues the Arkansas death penalty scheme is unconstitutional because it impermissibly mandates the death penalty. Petitioner argues the verdict forms improperly required unanimity on mitigating circumstances in violation of *Mills v. Mary-*

*land,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). The district court correctly decided petitioner was not entitled to relief on this claim in light of the Supreme Court's decision in *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) (upholding Pennsylvania death penalty scheme which is similar to that of Arkansas). 802 F.Supp. at 215; *see also Swindler v. Lockhart,* 739 F.Supp. 1323, 1325–27, 1329 (E.D.Ark.1990) (Woods, J.) (rejecting *Mills v. Maryland* challenge to Arkansas mitigating circumstances instruction and verdict forms). Petitioner conceded this point in his Brief for Appellant at 58.

## EX POST FACTO VIOLATION

■ Petitioner next argues Ark.Code Ann. § 5–4–616, which provides the procedure for resentencing after the vacating of a death sentence, is unconstitutional as applied to him. The resentencing statute was enacted in 1983 and applies retroactively to any defendant sentenced to death after January 1, 1974. Under the resentencing statute, a second jury resentences the defendant rather than the original jury. Petitioner argues that the resentencing statute violates the *ex post facto* clause because, under the law in effect at the time the offense was committed, he was entitled to a new guilt phase proceeding, if there was an error in sentencing. The district court correctly decided petitioner was not entitled to relief on this claim in light of the Supreme Court's decision in *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (retroactive reformation of verdict pursuant to state statute allowing appellate court to reform improper verdict held no violation of *ex post facto* clause). 802 F.Supp. at 216. Petitioner conceded this point in his Brief for Appellant at 63.

## IMPROPER STATEMENTS

■ Petitioner next argues the district court erred in denying his claim that the prosecutor's opening and closing arguments in the 1988 resentencing proceeding denied him due process. In the opening argument the prosecutor described the victims by their age, race and sex. Petitioner argues the prosecutor's racial references were improper

and inflammatory. Defense counsel moved for a mistrial, which the state trial court denied. On appeal the state supreme court concluded that although racial descriptions were almost always irrelevant and that the race of a victim should not be mentioned to the jury unless necessary, the prosecutor's references to the races of the victims were not so egregious as to warrant a mistrial. 783 S.W.2d at 346. The state trial and appellate courts' rulings on this issue are entitled to the presumption of correctness. *See, e.g., Schlup v. Armontrout,* 941 F.2d 631, 641 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1273, 117 L.Ed.2d 499 (1992). We agree with the state courts and the district court that the prosecutor's racial references were improper. 802 F.Supp. at 216, citing 783 S.W.2d at 346. However, it is not enough that the prosecutor's remarks were "undesirable or even universally condemned." *Id., citing Darden v. Wainwright,* 699 F.2d 1031, 1036 (1983), *rev'd on other grounds,* 725 F.2d 1526 (11th Cir.1984) (banc), *aff'd,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright,* 477 U.S. at 181, 106 S.Ct. at 2471, *citing Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Under this standard of review, we agree with the state courts and the district court that the prosecutor's references to the races of the victims did not deprive petitioner of a fair resentencing trial. The prosecutor's comments did not manipulate or misstate the evidence or implicate other specific constitutional rights of the accused such as the right to counsel or the right to remain silent. In addition, the substantial evidence of aggravating circumstances reduced the likelihood that the jury's resentencing decision was influenced by the improper argument.

■ Petitioner also argues the district court erred in denying his due process claim that the prosecutor suggested during closing argument that petitioner had fabricated certain mitigating evidence about abuse by his father. We disagree. The prosecutor's comment was based upon the testimony of a

rebuttal witness that petitioner told him in a newspaper interview published in 1984 that he had a loving father. In addition, as noted by the state courts and the district court, this comment could not have prejudiced petitioner because the jury unanimously found that the mitigating circumstance of an abusive upbringing existed. 802 F.Supp. at 216, *citing* 783 S.W.2d at 346.

## IMPROPER IMPEACHMENT

■ Petitioner next argues he was denied due process when the prosecutor improperly impeached defense witness Father Louis Franz at the 1988 resentencing trial. Father Franz testified about petitioner's good works and accomplishments while in prison. On cross-examination, over a defense objection, the prosecutor asked Father Franz about his intervention in another death penalty case, against the wishes of the prisoner, in an attempt to show that Father Franz was so opposed to the death penalty that he would go to great lengths to prevent its imposition. Petitioner argues the question was an inflammatory reference to a notorious and tragic case and that the decision to pursue legal process to determine a question of law is not a proper subject for impeachment.

■ The proper scope of cross-examination is a question of state law, and ordinarily wide latitude is allowed on cross-examination with respect to witness credibility and bias. Such an evidentiary error would not warrant federal habeas relief unless it can be shown that the ruling violated a specific constitutional provision or resulted in a trial so fundamentally unfair as to violate due process. *E.g., Cooley v. Lockhart,* 839 F.2d 431, 432 (8th Cir.1988) (per curiam); *Hobbs v. Lockhart,* 791 F.2d 125, 127 (8th Cir.1986). We agree with the district court that even if Father Franz's involvement in another death penalty case was not a proper subject for impeachment, it was not so prejudicial as to violate due process. 802 F.Supp. at 217.

## EVIDENCE OF MITIGATING CIRCUMSTANCES

■ Petitioner next argues the jury improperly ignored evidence presented in mitigation and that the state supreme court failed to correct this error on direct appellate review. The jury unanimously found only the existence of the mitigating circumstance of a deprived childhood. The record does not support petitioner's claim that the jury improperly ignored other mitigating evidence. Although there was considerable evidence of petitioner's youth and domination by Clark and of petitioner's good works and accomplishments while in prison, there was also evidence that during the crime petitioner was the one in control and was not acting on the instructions of anyone and that petitioner's prison activities were not as extensive or as altruistic as he represented. 802 F.Supp. at 219, *citing* 783 S.W.2d at 345.

■ With respect to petitioner's argument that the state supreme court failed to conduct a comparative proportionality review[4] of his death sentence, the state supreme court performed such a review twice, once after his conviction in 1976 and again after the resentencing in 1988, and each time concluded that there was "no basis in the record to hold that the sentence of death was wantonly or freakishly imposed against [petitioner]." *Pickens v. State,* No. CR 89–94, 1990 WL 210641, slip op. at 1, *citing Pickens v. State,* 551 S.W.2d 212. In particular, we agree with the district court that the three cases cited by petitioner[5] in which the state supreme court vacated the death sentences are distinguishable from the present case. 802 F.Supp. at 219.

Accordingly, we affirm the judgment of the district court denying the petition for writ of habeas corpus.

---

4. Comparative proportionality review of death sentences is not constitutionally required. *Pulley v. Harris,* 465 U.S. 37, 51, 104 S.Ct. 871, 879, 79 L.Ed.2d 29 (1984). Arkansas conducts such a review as part of the appellate review process. *Ruiz v. State,* 280 Ark. 190, 655 S.W.2d 441 (1983) (per curiam).

5. *Henry v. State,* 278 Ark. 478, 647 S.W.2d 419, *cert. denied,* 464 U.S. 835, 104 S.Ct. 121, 78 L.Ed.2d 119 (1983); *Sumlin v. State,* 273 Ark. 185, 617 S.W.2d 372 (1981); *Giles v. State,* 261 Ark. 413, 549 S.W.2d 479, *cert. denied,* 434 U.S. 894, 98 S.Ct. 272, 54 L.Ed.2d 180 (1977).