**Edward Charles PICKENS, Petitioner,**

v.

**A.L. LOCKHART, Director Arkansas Department of Correction, Respondent.**

**No. PB–C–91–331.**

United States District Court, E.D. Arkansas, Pine Bluff Division.

Sept. 2, 1992.

Jeffrey M. Rosenzweig, Little Rock, Ark., for petitioner.

Olan W. Reeves, Asst. Atty. Gen., Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

### HISTORY OF LITIGATION

Edward Charles Pickens has been on death row for seventeen years. The facts in his case are set forth in the appeal of his original conviction and sentence. *Pickens v. State,* 261 Ark. 756, 551 S.W.2d 212 (1977), *cert. denied,* 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978); petition for post-conviction relief, *Pickens v. State,* 266 Ark. 486, 586 S.W.2d 1 (1979), *cert. denied,* 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). The facts are also set out in detail in my original federal habeas decision. *Pickens v. Lockhart,* 542 F.Supp. 585 (E.D.Ark.1982). In his original petition Pickens raised twenty federal constitutional issues, all of which were rejected by the district court. On appeal to the Court of Appeals, the Eighth Circuit declined to set aside the conviction but ordered a new trial on the penalty phase because counsel was ineffective in that aspect of the trial. Counsel was found to be ineffective for his failure to present evidence of mitigating circumstances and in failing to object to an erroneous instruction. *Pickens v. Lockhart,* 714 F.2d 1455 (8th Cir.1983). In two new penalty-phase trials, evidence was presented of mitigating circumstances and the erroneous instruction was not given.

The first resentencing trial was scheduled in November, 1984 in Prairie County, where the case had been moved by the defendant in a change of venue, but a mistrial was declared because of the following developments.

"After voir dire of the jury panel had begun, one of the State's witnesses at the original trial, Harold Goacher, informed the prosecutor that what he had said petitioner Pickens had done during the crime Antonio Clark did, and what he said Clark did, petitioner had done." *Pickens v. State,* 284 Ark. 506, 683 S.W.2d 614, 615 (1985). After Goacher made this statement, Pickens moved for a hearing. When his motion was denied, he applied to the Supreme Court of Arkansas for writs of mandamus, certiorari, and error coram nobis. All of these writs were denied. After this interruption, a resentencing jury was impanelled September, 1985 and Pickens was again sentenced to death. *Pickens v. State,* 292 Ark. 362, 730 S.W.2d 230 (1987), *cert. denied,* 484 U.S. 917, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The Supreme Court of Arkansas reversed, finding that the trial court erroneously limited the proof of mitigating circumstances to a time period before the murder was committed. The trial judge should have allowed Pickens "to introduce the testimony of various witnesses regarding character, rehabilitation, adjustment to prison and good works he had undergone or performed since the murder occurred." *Id.* 730 S.W.2d at 232.

After the reversal, another resentencing jury was impanelled, this time in Arkansas County at the defendant's request. Pickens was sentenced to death a third time. The Supreme Court of Arkansas affirmed. *Pickens v. State,* 301 Ark. 244, 783 S.W.2d 341 (1990), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3257, 111 L.Ed.2d 766 (1990). Pickens filed a Rule 37 petition which was denied. *Pickens v. State,* C.R. 89–94, 1990 WL 210641 (Dec. 17, 1990).

He again filed for federal habeas corpus relief, raising the following issues:

(1) recantation of witness testimony from 1976 trial;

(2) coerced confession admitted at 1976 trial;

(3) denial of fair jury during 1988 resentencing because of death qualification issue;

(4) trial court at 1988 resentencing refused to give proposed mitigating circumstance instruction;

(5) Arkansas resentencing statute is unconstitutional as it violates *ex post facto;*

(6) denial of due process when trial court permitted improper prosecutor argument at 1988 resentencing;

(7) denial of due process when the state presented rebuttal evidence and a closing argument at 1988 resentencing;

(8) denial of due process when trial court at 1988 resentencing allowed prosecutor to refer to the killing of one of the other victims;

(9) denial of due process when trial court at 1988 resentencing allowed evidence concerning petitioner's crime committed in Michigan;

(10) denial of due process when trial court at 1988 resentencing allowed impeachment of witness; and

(11) denial of rights at 1988 resentencing because the jury did not find mitigating circumstances as presented by petitioner.

## I

## THE RECANTATION ISSUE

Harold Goacher, one of the victims, testified at trial that the two dark men (Pickens and Clark) did all the shooting. One of them came into the room where seven victims were on the floor and shot them. Subsequently one of them came back again and shot the two Lockridge men, Jimmy Scherm, and Wes Noble. The latter pair died from their wounds. Pickens was tried for the murder of Wes Noble. Goacher, however, testified that he could not make a positive identification of Noble's actual murderer.

When this case was remanded for a new trial by the Court of Appeals on the sentencing phase only, as noted *supra,* Goacher informed the prosecutor that what he had said Pickens had done, Clark had actually done, and what he said Clark had done, Pickens had actually done. With reference to this change in Goacher's testimony, we agree with the statement of the Supreme Court of Arkansas:

> Furthermore, even if the petition for writ of error coram nobis were timely, the record does not indicate that there would be any difference in the outcome of the guilt phase. Mr. Goacher testified that both of the men he described as dark-skinned men (Clark and Pickens) did the shooting, although he did not separate their specific actions. Since Clark was also found guilty and received the death penalty, it cannot be said that the result of the guilt phase would have been different. If Goacher's testimony would go to mitigation, it may be heard in the sentencing proceeding now in progress.

*Pickens v. State,* 683 S.W.2d at 616.

Goacher made a more serious charge, claiming that he was told by special prosecutor Jack Lassiter and Gary Isbell to commit perjury in testifying that Clark did not shoot Wes Noble. Lassiter and Isbell were Assistant Attorneys General at the time and were highly respected members of the Arkansas Bar. Lassiter denied this charge at the first resentencing hearing in 1984. On the basis of these events, Pickens now asks that his original conviction be set aside. There are several fallacies in this argument. First, the guilt of Pickens was established in the first trial and the subsequent habeas proceedings from which there was no appeal from the Eighth Circuit to the Supreme Court of the United States. The present habeas proceeding is only involved with the last sentencing hearing which was unanimously affirmed by the Supreme Court of Arkansas. *Pickens v. State,* 783 S.W.2d 341. Neither Goacher nor Lassiter testified at the hearing which is now under review in this proceeding. Pickens' guilt was simply not at issue, as his attorney conceded when the jury during their deliberations sent the following note: "Has Mr. Pickens exhausted all his appeals on his murder conviction?" (TR 1704). Petitioner's attorney responded: "O.K. I don't have any problem with the Court

putting the answer—the language all appeals as to guilt or innocence of the murder conviction have been exhausted, or all appeals as to guilt, yeah, all appeals as to guilt of the murder conviction.... Ah, guilt of the murder conviction have been exhausted." (TR 1704–705).

At any rate, there was abundant evidence of petitioner's guilt adduced in the hearing now under review. Jerry Lockridge, a member of the army special services force, home on leave, was one of those wounded during the robbery. He testified as follows:

Q What happened after that?

A Ah, probably within two to three seconds after the time that, ah, you heard the door, ah, close, ah, one of the black gentlemen walked back in. He walked over to—

Q Which black gentleman.

A Mr. Pickens walked back in.

Q The gentleman seated here at counsel table?

A Yes, sir. Yes, sir.

Q Is there any doubt in your mind this is who you saw?

A No doubt in my mind whatsoever, sir.

Q How—was he armed—still armed at that time?

A Still armed at that time with the pistol in his hand, sir.

Q O.K.

A He came in and made the statement that, ah, we're not here to kill anyone especially any blacks and less than a second later he pointed the gun point blank range at Mr. Noble's head and pulled the trigger.

Q Did the gun fire?

A Yes, sir.

Q Did the bullet strike Mr. Noble?

A Ah, yes, sir.

(TR 1274–75).

If there was any need to relitigate petitioner's guilt, the above testimony establishes it beyond all question. As the Supreme Court of Arkansas said:

At the sentencing hearing, one of the victims, Jerry Lockridge, testified that Pickens fired first, shooting Wes Noble at point blank range. Other shots, fired by Pickens or the others, then followed in rapid succession until the gun was emptied. The gun was then reloaded and at least one more shot was fired. Lockridge said, "during the entire time I was there, ... Mr. Pickens was the individual doing the talking ... he's the one that told me to lay down on the floor ... he was the one that did the talking to Mr. Goacher when they found the money." Lockridge said he perceived Pickens as the one in control of the situation. Another victim, James Weatherly, said Pickens was not acting on the instructions of anyone. From this evidence, the jury could reasonably have concluded that the mitigating circumstance of youth and domination by another person did not exist.

*Pickens v. State*, 783 S.W.2d at 345. This is a fair summary of the testimony concerning Pickens' role in the offense.

Petitioner presented evidence on this issue in a hearing before this court on August 26, 1992. He called Harold Goacher as his only witness. Goacher was a highly unsatisfactory witness. He is 78 years of age, and his mental faculties appear to be somewhat deficient. At times in his testimony he seemed to say that Clark shot Wes Noble. At other times he testified that he could not say whether Clark or Pickens shot Noble because they were passing the pistol back and forth and both were shooting. The investigating state police officer, Lt. W.D. Davidson, testified that Goacher never told him that Clark shot Noble until the morning of the August 26, 1992 hearing before me, while they were both in the witness room. On that occasion he said Clark shot Noble and Pickens shot Scherm. However, in an interview with Lt. Davidson on December 12, 1975, Goacher picked out a picture of Pickens as the man who first raped Mrs. Gunnells and who fired the first series of shots. (Resp.Ex. P). It is undisputed that Noble was killed in the first gunfire.

In the first trial Goacher testified that Pickens and Clark did the shooting—"They just come in and went to shooting." All of

the witnesses agreed that Gooch (the light-complexioned man) did no shooting.

A mistrial was declared as noted, *supra,* at the beginning of the first resentencing hearing in 1984. This hearing resumed in 1985, after Goacher's alleged recantation. Goacher testified as follows in this hearing: "After they shot the first round, they went in the store and put more bullets in the gun, and then when they come in is when Pickens done the shooting. Clark emptied the gun one time and Pickens emptied the gun one time." Goacher testified the gun changed hands but that Clark shot Noble. (Pet.Ex. 1).

At the trial of Antonio Clark, Goacher testified as follows:

A ... They shot six times and took the gun and stepped back out into the store building. I could see through that door one of them sitting up on the deep freeze with his legs swinging back and forth and they was talking and emptied the gun and the other one said, "Let me have it" and he come back in there and shot six more times.

Q Did they say anything while they were shooting?

A Well when they come back in, after the second one come in and started shooting, Wes Noble raised his head up about like that off the floor (measured about four inches). He said, "well we didn't come down here to kill no blacks but you old mother fucker you have got to go" and shot him in the head.

Q Did you know, could you—can you identify who did the shooting?

A Well all I know is the blackest men done the shooting.

(Resp.Ex. U, 111).

Based on all of this testimony of Mr. Goacher given before me and the exhibits received in evidence, I find that Goacher is a thoroughly unreliable witness. He contradicted himself a number of times while on the stand before me; his testimony at the trial and the two sentencing hearings is contradictory as well as the deposition given to the prosecuting attorney (Pet.Ex. 2). In my opinion, Goacher is confused about what happened on the afternoon of October 20, 1975. Undoubtedly he was under great stress. He and his customers were victims of two mass shootings, and his female employee was brutally raped. He himself was wounded. While Goacher is correct on the broad outlines of the episode, he is unreliable on the specifics.

The testimony of Jerry Lockridge, in my opinion, is much more credible on the identity of the murderer of Wes Noble. Lockridge, who did not testify in the original trial because he was overseas in the army, was a combat veteran of an army special forces unit. He had been wounded in Vietnam. Lockridge would have been much more likely to maintain his composure through such an ordeal.

I do not believe that Goacher intentionally committed perjury in the original trial. He now says he confused the actions of Clark and Pickens. Both, however, opened fire on the helpless victims huddled on the floor. I am completely convinced that the conviction of Pickens and the death sentence imposed upon him do not rest on perjured testimony. Petitioner does not contend that any testimony adduced in the hearing now reviewed by me is in any way tainted by perjury. Goacher did not even testify in the hearing I am now reviewing.

Although in the August 26, 1992 hearing Goacher states that he did not commit perjury by testifying that Pickens killed Noble, he does claim that Jack Lassiter, a former assistant attorney general and a respected member of the bar of this court, told him to give such an answer in the trial. Goacher says he was not asked the question at trial. If he had been asked, he would have told the truth by stating that he did not know which of the two killed Noble. He states in his deposition (Pet's. Ex. 2) that when Lassiter suggested that he give this testimony, he was accompanied by Gary Isbell who is described as being in a wheel chair. Mr. Isbell was then an assistant attorney general and is now circuit judge of the 14th Judicial District. He is a double amputee.

At the hearing before me on August 26, 1992, Goacher's testimony on this point is confusing, vague and contradictory. Lassi-

ter took the stand and vehemently denied that he had told Goacher to commit perjury. His testimony was corroborated by Judge Isbell. I accept the testimony of these two men. Their clear, straightforward testimony is in sharp contrast to the vacillating, contradictory, confused testimony of Goacher. I find it inconceivable that two respected members of the bar and state officials would have been guilty of subornation of perjury. At any rate no perjury occurred in the original trial because Goacher testified as he did before me that he could not say for sure who killed Noble. (Pet.Ex. 1). There is no basis for setting aside Pickens' guilty conviction on the ground that it was obtained on perjured testimony.

## II

### COERCED CONFESSION ISSUE

This issue was summarily decided by the court in an order dated May 22, 1992. A copy of this order is attached hereto. No further discussion is necessary. I have permitted petitioner to make an offer of proof on this issue.

## III

### THE JURY SELECTION ISSUE

*(a) Potential Jurors Horner and Robinson*

■ Petitioner claims that potential jurors Rosemary Horner and Lyndell Robinson were improperly excluded from the jury because of their views regarding the death penalty contrary to *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The Supreme Court of Arkansas has fairly summarized the Voir Dire testimony of these individuals and why they were properly excused for cause:

> The trial judge committed no error in excusing the jurors in this case. Venireperson Lyndell Robinson waivered [sic] back and forth between saying she "probably could" impose the death penalty and that she did not believe in the death penalty. The judge finally excused her on his own motion. His decision was based on her inability to give a consistent answer to the death penalty question and on her response which indicated she would be led by other members of the jury rather than make her own decision. Venireperson Rosemary Horner started out saying she was against the death penalty. When asked if she could impose the penalty, she replied "I guess I could if I had to," but that she didn't really want to. Later she said she "guessed" she could consider it and could keep an open mind "if I had to." She was asked if she would refuse to vote for the death penalty no matter what and replied "no," and finally said she could vote for the death penalty "if I had to." The trial court was concerned that Mrs. Horner's continuous response of "if I had to" indicated a person that might not be able to consider the death penalty even if the evidence justified it. Giving considerable deference to the trial judge's ability to see and hear Mrs. Horner, we hold her excusal was not error.

*Pickens v. State*, 783 S.W.2d at 344.

■ General objections to the death penalty or conscientious or religious scruples against the death penalty are not grounds for excusing a juror for cause. *Witherspoon v. Illinois, supra.* However, if the views as to the death penalty would substantially impact the performance of one's duties as a juror in accordance with the court's instruction and his oath, an excuse for cause is proper. *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). *Adams* was followed in *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), where the court pointed out that the presumption of correctness applied to the trial and state appellate courts' rulings as to the voir dire, citing *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). Emphasizing the deference given to the rulings of the trial court, the Supreme Court said in *Witt:*

> Once it is recognized that excluding prospective capital sentencing jurors because of their opposition to capital punishment is no different from excluding

jurors for innumerable other reasons which result in bias, *Patton* must control. The trial judge is of course applying some kind of legal standard to what he sees and hears, but his predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record. These are the "factual issues" that are subject to § 2254(d).

469 U.S. at 429, 105 S.Ct. at 855.

The standards adopted in these cases have been applied in this Circuit. *Byrd v. Armontrout*, 880 F.2d 1 (8th Cir.1989); *Hulsey v. Sargent*, 865 F.2d 954 (8th Cir. 1989). We hold that the trial judge did not transgress constitutional bounds in exclusion of these members of the jury panel.

### (b) Exhaustion of Peremptory Challenges

■ The petitioner claims that he was forced to use peremptory challenges on nine venire persons when the judge refused to excuse them for cause. According to *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) decided several months before the sentencing hearing which now concerns us, "the focus should not be on a juror who was peremptorily challenged but on the person who actually sat on the jury," 783 S.W.2d at 345. The Supreme Court of Arkansas pointed out that Pickens did not contend that any person who sat on the jury should have been challenged for cause. "He received the impartial jury to which he is entitled and only complains of the loss of peremptory challenges. Under *Ross v. Oklahoma* ... this is not reversible error." *Id.* The court also cited *Gardner v. State*, 296 Ark. 41, 754 S.W.2d 518 (1988) and *Watson v. State*, 289 Ark. 138, 709 S.W.2d 817 (1986). The Supreme Court in *Ross* held that to preserve this point for habeas corpus reviews Pickens must have challenged the trial court's refusal to excuse some juror or jurors who actually served on the jury after his peremptory challenges were exhausted. *Id.* 487 U.S. at 85, 108 S.Ct. at 2276. The record does not show that this was done.

## IV

## THE CONSTITUTIONALITY OF THE ARKANSAS DEATH PENALTY SCHEME

The Arkansas death penalty scheme has been recently attacked in a habeas proceeding before me in *Swindler v. Lockhart*, 693 F.Supp. 760 (E.D.Ark.1988); *aff'd.*, 885 F.2d 1342 (8th Cir.1989), *cert. denied*, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990), subsequent petition *denied*, 739 F.Supp. 1323 (1990), *aff'd* by Court of Appeals, stay of execution *denied*, 496 U.S. 932, 110 S.Ct. 3208, 110 L.Ed.2d 656 (1990). The verdict forms used were made an exhibit to my opinion and are the same as those used in the case at bar. 739 F.Supp. at 1329. I upheld the constitutionality of the Arkansas Scheme in this recent death penalty case and was affirmed by the Court of Appeals and the Supreme Court of the United States. Petitioner concedes that the Supreme Court of the United States in *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) upheld a similar scheme and is dispositive of this point. The applicability of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1987) and *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) to the Arkansas Scheme was specifically rejected in *Swindler v. Lockhart, supra*. The *Mills* analogy was also rejected by the Arkansas Supreme Court, 783 S.W.2d at 343–44. Petitioner's attack on the Arkansas Scheme and Model Criminal Jury Instruction AMCI 1507 is without merit.

## V

## THE RESENTENCING STATUTE IS UNCONSTITUTIONAL ON EX POST FACTO GROUNDS

Pickens contends that the resentencing statute, Ark.Stat.Ann. § 5-4-616, which provides for the procedure for remand after the vacating of a death sentence, was unconstitutionally applied to Pickens. The statute was enacted in 1983 and applies retroactively to any defendant sentenced to death after January 1, 1974. It allows

another jury to resentence an offender, instead of the original jury. He concedes that this issue was decided adversely to him in *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). He preserves the point only for the purpose of having it readdressed by the Supreme Court of the United States.

## VI

## PROSECUTOR'S REMARKS IN OPENING STATEMENT AND CLOSING ARGUMENT ARE GROUNDS FOR MISTRIAL

In his opening statement the prosecuting attorney commented as follows:

> And when they were through Wes Noble, a seventy-six year old black man laid dead; Jimmy Scherm, thirty two year old white man laid dead; Thelma Gunnell, a sixty two year old grandmother, white woman lay raped twice, shot in the neck; Floyd Lockridge, forty seven year old white man.

(TR 1253–54).

■ Petitioner moved for a mistrial but on reflection did not press for an admonition (TR 1251). The motion was overruled. The issue was raised on appeal to the Supreme Court of Arkansas, which found that the trial court "did not abuse its discretion in denying the mistrial and there was no manifest prejudice to the appellant." 783 S.W.2d at 346. In connection with this issue, the Supreme Court of Arkansas quite properly said: "Racial descriptions are irrelevant in almost every instance in a trial. The race of a victim simply should not be mentioned to the jury unless necessary...." *Id.* The views of the trial court and the Supreme Court that the remarks were not so egregious as to warrant a mistrial is entitled to the presumption of correctness. *Schlup v. Armontrout*, 941 F.2d 631, 641 (8th Cir.1991); *Laws v. Armontrout*, 863 F.2d 1377, 1381 (8th Cir. 1988) (*en banc*), *cert. denied* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415, *rehearing denied*, 490 U.S. 1117, 109 S.Ct. 3179, 104 L.Ed.2d 1041 (1989).

■ Every improper argument made by a prosecutor does not necessarily present a constitutional violation. *Donnelly v. De Christoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974); *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir.1987), *cert. denied*, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987). Petitioner must show a reasonable probability that absent the alleged improper remark, the result of the sentencing would have been different. *Hamilton v. Nix, supra.* On this point the Supreme Court's comments in *Darden v. Wainwright*, 477 U.S. 168, 180, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) are instructive:

> Prosecutor McDaniel made several offensive comments reflecting an emotional reaction to the case. These comments undoubtedly were improper. But as both the District Court and the original panel of the Court of Appeals (whose opinion on this issue still stands) recognized, it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031] at 1036 [ (11th Cir.1983) ]. The relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 [94 S.Ct. 1868, 40 L.Ed.2d 431] (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* at 642, 94 S.Ct. at 1871.

■ Pickens also claims that the prosecuting attorney implied in his closing argument that he concocted mitigating evidence about abuse by his father. A rebuttal witness testified that Pickens told him in a newspaper interview published April 29, 1984 that he had a loving father (TR 1658), which justified the prosecutor's argument. However, the Supreme Court of Arkansas disposed of this contention in one sentence. "Pickens suffered no prejudice since the jury unanimously found that this mitigating circumstance existed." 783 S.W.2d at 346.

## VII

## STATE HAD NO RIGHT TO REBUTTAL EVIDENCE OR TO MAKE FINAL CLOSING ARGUMENT

■ Pickens argues that the state had no right to introduce rebuttal testimony or to make the final closing argument. He bases this argument on the fact that the statutory procedure, Ark.Stat.Ann. § 5-4-602 does not mandate either rebuttal or the order of closing arguments. The statute is silent. However, the Arkansas Supreme Court has held on direct appeal that the procedure used was proper:

He questions the propriety of the state's presenting a rebuttal witness and a second closing argument during a sentencing proceeding. In *Pickens v. State*, 292 Ark. 362, 730 S.W.2d 230 (1987), we held it was proper for the state to have the last closing argument because it has the burden of proving the aggravating circumstances outweigh the mitigating. We did not address the issue of rebuttal testimony, but the same reasoning applies. In order to effectively discharge its burden, the state must be empowered to rebut mitigating evidence. *See State v. DePew*, 38 Ohio St.3d 275, 528 N.E.2d 542 (1988) *cert. denied*, 489 U.S. 1042, 109 S.Ct. 1099, 103 L.Ed.2d 241 (1989).

*Pickens v. State*, 783 S.W.2d at 347.

These are purely matters of state law on which the highest court of Arkansas has spoken. Such an evidentiary and procedural ruling cannot be the basis of habeas corpus relief unless it can be shown that the ruling violates a specific constitutional provision or that it is so prejudicial as to violate due process. *Hobbs v. Lockhart*, 791 F.2d 125, 127 (8th Cir.1986); *Cooley v. Lockhart*, 839 F.2d 431 (8th Cir.1988). Petitioner has fallen far short of making such a showing here.

## VIII

## ALLEGATIONS AND PROOF CONCERNING DEATH OF JAMES SCHERM

■ Pickens objects to the testimony alleging that he killed James Scherm because he was only charged with the murder of Wes Noble. We agree with the disposition of this issue by the Supreme Court of Arkansas:

Second, Pickens complains that the state attempted to introduce evidence that he killed Jimmy Scherm, one of the victims who died in the robbery (Pickens had only been found guilty of killing Wes Noble). The basis of Pickens' argument is that the state introduced the evidence to prove the aggravating circumstance of commission of a prior violent felony. Ark.Code Ann. § 5-4-604(3) (1987). The prosecutor did not argue Scherm's death to the jury as an aggravating circumstance. The only evidence that Pickens killed Scherm came from the victims' general testimony of the crime. The state may prove the underlying facts of the murder in the resentencing proceeding.

783 S.W.2d at 346. The state had a right to show the circumstances of the crime. "[T]he constitution does not require the jury to ignore other possible aggravating factors in the process of selecting those defendants who will actually be sentenced to death." *Zant v. Stephen*, 462 U.S. 862, 878, 103 S.Ct. 2733, 2743, 77 L.Ed.2d 235 (1983). While as noted by the Supreme Court of Arkansas the prosecutor did not argue the murder of Scherm as an aggravating circumstance, it was part of the aggravating circumstance of knowingly creating a great risk of death to persons other than Wes Noble. The trial court's admission of testimony that Pickens killed Scherm during the robbery and almost simultaneous murder of Wes Noble was entirely proper.

## IX

## IMPROPER CROSS-EXAMINATION OF PETITIONER'S MOTHER

Pickens claims that his right to due process and a fair trial was violated when testimony was admitted that implied he had committed a crime in Michigan. The Supreme Court of Arkansas disposed of this contention as follows:

Finally, Pickens claims that certain testimony elicited from his mother left the impression that he had participated in a murder in Michigan. He made no motion to have the testimony stricken, did not ask that the jury be admonished, nor has he shown the testimony was so prejudicial as to warrant a mistrial. Therefore, he cannot obtain reversal on this point. *Birchett v. State*, 294 Ark. 176, 741 S.W.2d 267 (1987).

*Pickens v. State*, 783 S.W.2d at 341.

 There is wide latitude on the cross-examination of an adverse witness. The cross-examination here did not exceed proper bounds. It clearly did not offend due process. In a habeas corpus proceeding, the scope of review as to the trial court's ruling on evidentiary matter is limited. *Hobbs v. Lockhart*, 791 F.2d 125 (8th Cir.1986).

## X

### IMPEACHMENT OF WITNESS FATHER FRANZ

 Petitioner alleges that it was improper for the state to impeach a witness, Father Louis Franz, at the 1988 resentencing.

When raised on direct appeal, the Arkansas Supreme Court held in *Pickens v. State*, 783 S.W.2d at 346–47:

Third, Pickens presented the testimony of Father Louis Franz who spoke of the good works and self-improvement Pickens had undertaken while in prison. On cross-examination, the state asked Father Franz if he had once intervened in a case to prevent the death penalty from being carried out, even though it was against the wishes of the convicted man. The state was referring to *Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988) in which Father Franz, as next friend, tried to appeal the death sentence of Ronald Gene Simmons after Simmons waived his appeal. Pickens objected to this reference to the Simmons case, but the trial court allowed the question. The state was attempting to show that Father Franz was so unalterably opposed to

the death penalty that he would go to great extremes to keep it from being carried out. Wide latitude is allowed on cross examination to elicit facts impeaching the credibility of a witness and the scope of that examination is largely within the discretion of the trial judge. *Alexander v. State*, 257 Ark. 343, 516 S.W.2d 368 (1974).

Petitioner must show a due process violation before he is entitled to relief on this issue. *Byrd v. Armontrout*, 880 F.2d 1 (8th Cir.1989), *cert. denied*, 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990); *Amos v. Minnesota*, 849 F.2d 1070 (8th Cir.1988), *cert. denied*, 488 U.S. 861, 109 S.Ct. 159, 102 L.Ed.2d 130 (1988); *Sullivan v. Minnesota*, 818 F.2d 664 (8th Cir.1987), *cert. denied*, 484 U.S. 862, 108 S.Ct. 178, 98 L.Ed.2d 131 (1987); *Wood v. Lockhart*, 809 F.2d 457 (8th Cir.1987); *Ball v. Wyrick*, 547 F.2d 78 (8th Cir.1976), *cert. denied*, 431 U.S. 941, 97 S.Ct. 2657, 53 L.Ed.2d 259 (1977). *See also Pentecost v. Estelle*, 582 F.2d 1029 (5th Cir.1978).

Petitioner has failed to show that the cross-examination of the witness violated due process. Even if error were shown, which we do not believe to be the case, petitioner is not entitled to relief under federal due process. *Berrisford v. Wood*, 826 F.2d 747 (8th Cir.1987), *cert. denied*, 484 U.S. 1016, 108 S.Ct. 722, 98 L.Ed.2d 671 (1988). As noted, *supra*, a federal habeas court can only grant relief when the state court's evidentiary ruling infringes on a specific constitutional protection or is so prejudicial that it violates due process. *Cooley v. Lockhart, supra.*

## XI

### DISREGARD OF MITIGATING EVIDENCE

The petitioner claims that the jury improperly ignored evidence presented in mitigation and the Supreme Court of Arkansas has not rectified this omission. The Supreme Court of Arkansas effectively answered this contention on the direct appeal:

Pickens was twenty-one years old in 1975 when he and two other men robbed a

grocery store in Casscoe. Nine people who were in the store at the time were crowded into a small room while the robbery took place. When Pickens and the others determined that there was no room in which they could lock up their victims, they opened fire on them and shot them repeatedly as they lay helplessly on the floor. Two people were killed and five others were seriously injured.

At the sentencing hearing, one of the victims, Jerry Lockridge, testified that Pickens fired first, shooting Wes Noble at point blank range. Other shots, fired by Pickens or the others, then followed in rapid succession until the gun was emptied. The gun was then reloaded and at least one more shot was fired. Lockridge said, "during the entire time I was there, ... Mr. Pickens was the individual doing the talking ... he's the one that told me to lay on the floor ... he was the one that did the talking to Mr. Goacher when they found the money." Lockridge said he perceived Pickens as the one in control of the situation. Another victim, James Weatherly, said Pickens was not acting on the instructions of anyone. From this evidence, the jury could reasonably have concluded that the mitigating circumstances of youth and domination by another person did not exist.

Pickens also presented evidence that he had corresponded with various young people since his imprisonment. However, the state's evidence showed that Pickens had once enclosed a pamphlet in a letter to one student soliciting funds for his defense. The jury could well have found that these efforts by Pickens were insincere and self-serving.

*Pickens v. State*, 783 S.W.2d at 345.

■ The credibility of the witnesses and the weighing of the testimony were matters for the jury. It is presumed that they took this responsibility seriously. *McGautha v. California*, 402 U.S. 183, 208, 91 S.Ct. 1454, 1467, 28 L.Ed.2d 711 (1971). This is the third jury which has sentenced petitioner to death. Such a result is hardly a surprise in view of the factual setting of this particular crime.

## XII

## COMPARATIVE REVIEW

■ Petitioner claims that the Supreme Court of Arkansas did not make a comparative review of other death sentences. *Collins v. State*, 261 Ark. 195, 548 S.W.2d 106, 122 (1977), *cert. denied*, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977). He mentions three cases in which death sentences have been vacated. The facts of those cases are far different from those in the instant case. Such a comparative review is not required. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). In his Rule 37 petition, he claimed that his sentence was disproportionate to those of his fellow perpetrators. The Supreme Court of Arkansas answered this contention and the comparative review argument as follows:

> There was testimony that both the petitioner and Antonio Clark shot the victims. Antonio Clark received a sentence of death but was returned to Michigan to serve a term of years for a crime committed there. Although this court may not have specifically stated that it has compared the petitioner's sentence, such a review has been made a part of our appellate review process. *Ruiz v. State*, 280 Ark. 190, 655 S.W.2d 441 (1983). In view of the severity of the crime, the extensive review that the petitioner has been afforded, and Antonio Clark's sentence, we find as stated in the petitioner's original appeal that there is "no basis in the record to hold that the sentence of death was wantonly or freakishly imposed against the appellant." *Pickens v. State*, 261 Ark. 756, 551 S.W.2d 212 (1977), *cert. denied*, 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978).

*Pickens v. State*, CR–89–94 decided December 17, 1990, 1990 WL 210641.

## CONCLUSION

The litigation on Pickens' guilt was terminated almost a decade ago. For almost another decade the litigation on the penalty phase has continued. The first penalty

hearing was terminated at the outset by a mistrial. The Arkansas Supreme Court reversed the second on an evidentiary question, but affirmed the last penalty trial. This last trial is before me on a habeas petition. In the course of the many appeals in the state and federal courts, nearly every conceivable issue has been raised and addressed judicially. Three juries have condemned Mr. Pickens to death, in spite of the excellent representation afforded him after remand by the Court of Appeals. Nothing in the conduct of the latest penalty hearing justifies granting of the federal habeas corpus petition. Nor do I find any reason to reopen the long-settled question of petitioner's guilt.

## ATTACHMENT

In the United States District Court

Eastern District of Arkansas

Pine Bluff Division

Edward Charles Pickens, Petitioner,

v.

A.L. Lockhart, Director of the Arkansas Department of Correction, Respondent.

No. PB–C–91–331

May 22, 1992.

### ORDER

INTRODUCTION. Edward Charles Pickens has filed a petition for writ of habeas corpus. Respondent acknowledges that Pickens has exhausted his available state remedies but maintains that his first two claims should be dismissed as an abuse of the writ because "[he] cannot show cause and prejudice for his failure to raise them in his prior habeas corpus petition." Response at 14. Respondent also alleges that the due process prong of Pickens' *Ross v. Oklahoma* claim is barred from federal review because of his failure to raise the claim in an Arkansas state court.

For the reasons that follow, the Court finds that his first claim and the due process prong of his *Ross v. Oklahoma* claim are subject to federal review and will be addressed at a later time. His second claim, however, is barred from federal review and will not be addressed.

RECANTATION CLAIM. Pickens' first claim challenges his 1976 conviction of capital murder because a prosecution witness, Harold Goacher, recanted his trial testimony in 1984. Whether Pickens can litigate this claim in this proceeding requires the Court to review the chronology of this case.

On October 20, 1975, Wes Noble was murdered during a robbery of Cloud's Grocery Store in Casscoe, Arkansas. In March of 1976, Pickens was convicted of the murder and sentenced to death. His conviction was affirmed by the state Supreme Court in June of 1977. *Pickens v. State*, 261 Ark. 756, 551 S.W.2d 212 (1977), *cert. denied*, 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978). He petitioned the state Supreme Court for post-conviction relief in 1979, but his request was denied. *Pickens v. State*, 266 Ark. 486, 586 S.W.2d 1 (1979), *cert. denied*, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981).

In 1981, Pickens filed his first petition for writ of habeas corpus. The petition was denied in June of 1982. *Pickens v. Lockhart*, 542 F.Supp. 585 (E.D.Ark.1982). The following year, the Court of Appeals vacated his sentence of death and remanded the case to state court for re-sentencing or reduction of the sentence to life in prison without parole. *Pickens v. Lockhart*, 714 F.2d 1455 (8th Cir.1983).

In November of 1984, the state trial court began selecting a jury for Pickens' re-sentencing. During this process, Mr. Goacher allegedly reported for the first time that he had not told the truth during Pickens' trial.[1] A mistrial was declared, and Pickens requested permission to place

---

1. The state Supreme Court gave the following account: "After voir dire of the jury panel had begun, one of the State's witnesses at the original trial, Harold Goacher, informed the prosecutor that what he had said petitioner had done during the crime, Antonio Clark [an accomplice] did, and what he said Clark did, petitioner had done." *Pickens v. State*, 284 Ark. 506, 683 S.W.2d 614, 615 (1985).

Mr. Goacher under oath and explore his statement. The request was denied. Pickens filed petitions for writs of mandamus, certiorari, and error coram nobis with the state Supreme Court in an attempt to litigate this issue. In February of 1985, the state Supreme Court denied the writs and made the following findings:

Petitioner seeks a writ of mandamus to compel the trial court to conduct a hearing on Mr. Goacher's testimony. Mandamus is an extraordinary writ issued to require an inferior court to act when it has improperly failed or declined to do so. It is never applied to control the discretion of a trial court, nor can it be used to correct an erroneous exercise of discretion. [Citation omitted]. If petitioner concludes that the resentencing procedure has been rendered unfair by the failure to hold a hearing, his remedy is on appeal, not a mandamus action.

Citing our recent holding in *Penn v. State* [228 Ark. 571, 670 S.W.2d 426 (1984)] ... wherein we discussed error coram nobis as a remedy where there is newly discovered evidence, petitioner argues that he is entitled to an evidentiary hearing to determine if Goacher's pronouncements warrant the granting of a new trial. *Penn,* however, concerns evidence discovered between the time for filing a motion for new trial has expired and the time the case is affirmed on appeal. In petitioner's case, the guilt phase of his trial has been affirmed. The Eighth Circuit Court of Appeals ordered no new trial on that phase. We made it clear in *Penn* such information was not a basis for a new trial. According to our decision, such information must be presented in a clemency proceeding.

Furthermore, even if the petition for writ of error coram nobis were timely, the record does not indicate that there would be any difference in the outcome of the guilt phase. Mr. Goacher testified that both of the men (Clark and Pickens) did the shooting, although he did not separate their specific actions. Since Clark was also found guilty and received

the death penalty, it cannot be said that the result of the guilt phase would have been different. If Goacher's testimony would go to mitigation, it may be heard in the sentencing proceeding now in progress.

*Pickens v. State,* 284 Ark. 506, 683 S.W.2d 614, 615–16 (1985). A second sentencing proceeding was conducted, and Pickens was again sentenced to death. The state Supreme Court reversed and ordered another re-sentencing proceeding. *Pickens v. State,* 292 Ark. 362, 730 S.W.2d 230 (1987), *cert. denied,* 484 U.S. 917, 108 S.Ct. 269, 98 L.Ed.2d 226. A third sentencing was held in 1988, and he again received the death penalty. This sentence was affirmed on appeal. *Pickens v. State,* 301 Ark. 244, 783 S.W.2d 341 (1990), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3257, 111 L.Ed.2d 766. He next requested post-conviction relief and raised the recantation issue. The state Supreme Court denied relief, finding:

The petitioner argues that he is entitled to a new trial because of a statement made by a prosecuting witness, Harold Goacher, to the prosecuting attorney. Goacher told the prosecuting attorney that his testimony at the petitioner's original trial was erroneous. This allegation was decided adversely to the petitioner in *Pickens v. State,* 284 Ark. 506, 683 S.W.2d 614 (1985). There, this court found that Goacher's claim would not change the outcome of the finding of guilt. A petitioner may not use a Rule 37 petition to reargue issues that have been decided against him. [Citations omitted].

Respondent's Exhibit E at 2. The application at bar soon followed.

As the Court has noted, respondent takes the position that Pickens' attempt to litigate the recantation claim is an abuse of the writ. Specifically, it is alleged that the claim could have been raised, but was not raised, in Pickens' first petition, a submission filed in 1981. The short answer to this assertion is that the alleged recantation did not occur until 1984, or approximately three years after Pickens' first petition was filed. The Court cannot agree with respondent that this claim could have been discov-

ered prior to the submission of the first petition. For this reason, Pickens cannot be faulted for failing to raise the claim in his first petition.

Respondent also apparently maintains that Pickens has procedurally defaulted in litigating the recantation claim in state court. The Court understands respondent to take the position that Pickens should have raised this claim in the appeals of his 1985 and 1988 re-sentencings. The Court disagrees.

First, the Court agrees with Pickens that respondent's contention is misleading. The appeals of his 1985 and 1988 re-sentencings did not deal with issues arising from the guilt phase of the proceeding. "They were merely re-sentencing trials ordered by the Court of Appeals for the Eighth Circuit. The trial court had absolutely no jurisdiction in either 1985 or 1988 re-sentencing to deal with guilt issues." Reply at 2. Thus, he cannot be faulted for failing to raise the recantation claim in those appeals.

Second, the Court notes as a general proposition that a federal court is precluded from addressing the merits of a claim if a state court did not address the merits because of a procedural default. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). This bar arises when the state court disposition rests on a procedural ground that is independent of federal law and adequate to support the judgment of the state court. *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991); *Grubbs v. Delo,* 948 F.2d 1459, 1462 (8th Cir.1991). As noted in *Grubbs,* "[t]he difficulty in applying this doctrine ... lies in determining what constitutes an adequate and independent state law ground." *Id.*

In the case at bar, Pickens gave the state Supreme Court two opportunities to pass on the recantation claim: (1) the 1985 petition for writs of mandamus, certiorari, and error coram nobis, and (2) the 1990 Rule 37 motion. In the 1985 proceeding, the court found that his petition for writ of error coram nobis was not timely. *Pickens v. State,* 284 Ark. 506, 683 S.W.2d 614, 615–16

(1985). It alternatively concluded, however, that the recantation claim had no merit because the recanted testimony would not have changed the outcome of the trial. *Id.* In the 1990 proceeding, the court re-adopted its earlier findings, sans the finding that the claim was not timely. Respondent's Exhibit E at 2. In a case involving a somewhat similar situation, the Court of Appeals has stated:

> If the state court relies upon both the substantive merits and a procedural default in rejecting a petitioner's claim, federal habeas review of the claim is precluded "only if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed,* [489] U.S. [255], 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). Therefore, only if the state court issues a "plain statement" that it is rejecting petitioner's federal claim on state procedural grounds will federal habeas courts be precluded from reaching the merits of the claim. *Id.* [489 U.S. at 262, 263] 109 S.Ct. at 1043, 1044.

*Shaddy v. Clarke,* 890 F.2d 1016, 1018 (8th Cir.1989). Having closely reviewed the disposition made of this claim by the state Supreme Court, the Court cannot conclude that the appellate court made a "plain statement" that it was rejecting Pickens' claim on a state procedural ground. For these reasons, the Court finds that Pickens did not procedurally default in litigating the recantation claim in state court and is not now barred from litigating the claim in this forum.

CONFESSION CLAIM. The second claim advanced by Pickens challenges the voluntariness of his confession. In support of this claim, he makes the following representations:

> Before the re-sentencing hearing, the original special prosecutor on the case, Jack Lassiter, revealed in an affidavit that R.D. Oliver, now deceased, one of the officers who took a 'confession' from Pickens, admitted to Lassiter that he had coerced the confession from Pickens. Lassiter testified in camera in this matter in the 1985 re-sentencing trial, but his testimony was made moot, as far as pre-

sentation to the jury was concerned, by the prosecutor's decision not to attempt to introduce the confession in that proceeding.

Petition at 8–9. Respondent maintains, however, that Pickens should not be permitted to litigate this claim because he knew of the basis for the claim at least by 1981, the year he filed his first petition. Respondent takes the position that Pickens knew of the basis for the claim because "he was the person to whom the remarks by the police officer were allegedly made." Response at 8. Respondent advances the following in support of his position:

> [Petitioner] did not raise this [claim] at his 1976 trial even though there was a suppression hearing on his confession held prior to trial. He has not alleged any ineffective assistance of his trial counsel on this ground. It is also important to note that his 1976 trial testimony matches the confession that he alleges was coerced and thus he cannot show any prejudice by its admission at his trial.

Brief at 8. For these reasons, respondent asks the Court to refuse to address the claim because it constitutes an abuse of the writ as provided in Rule 9(b) of the Rules Governing § 2254 Cases.[2]

Rule 9(b) addresses successive petitions. It permits the Court to dismiss a successive petition if it fails to allege a new claim and the prior determination was on the merits. If, however, a new claim is alleged in the second petition, the Court may dismiss it if the failure to assert the new claim constitutes an abuse of the writ.

The initial consideration in this Rule 9(b) inquiry is whether a new claim is being asserted. By "claim" or "ground," the Supreme Court typically means a sufficient legal basis for granting the relief sought. *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963).

For example, the contention that an involuntary confession was admitted in evidence against him is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different "ground" than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments, [citation omitted], or be couched in different language, [citation omitted], or vary in immaterial respects, [citation omitted]. Should doubts arise in particular cases as to whether two grounds are different or the same, they should be resolved in favor of the applicant.

*Id.*

The resolution of this issue requires the Court to review the petitions filed by Pickens. The record establishes that he filed his first petition in 1981 and challenged his 1976 conviction and sentence. In that petition, he alleged that his confession was not voluntary. Specifically, he alleged that his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel were violated when an interrogating officer failed to "scrupulously adhere to [his] assertion of his right under *Miranda* to talk to an attorney." Respondent's Exhibit G at 14–15. The Court of Appeals granted this petition in part when it upheld his conviction but overturned his sentence.

In 1988, Pickens was again sentenced to death. He has now filed a petition in which he again challenges his 1976 conviction and his 1988 sentencing. One of the claims raised in this petition is an assertion that his confession was not voluntary because of a threat made by an interrogating officer.

This review persuades the Court that the legal basis for the 1981 confession claim

---

2. As a preliminary matter, the Court finds that although this petition is his first challenge to his 1988 sentencing, it is his second challenge to his 1976 conviction. It is thus successive in the sense that it is a second challenge to the 1976 conviction and appropriate for Rule 9(b) consideration.

and the present confession claim are the same. They are both predicated upon the assertion that the Fifth Amendment was violated by the actions of the interrogating officer. It is obvious, however, that the underlying facts are different, i.e., the interrogating officer was initially alleged to have ignored Pickens' request for an attorney but is now alleged to have made a threat. Are these factual differences evidence of a new claim? The clear teaching of Sanders is that the claim is not new but merely couched in a different manner. Thus, the present claim is essentially the same claim he alleged in his first petition.

A federal court may dismiss as successive a claim raised in a prior petition and denied on the merits. *Sanders v. United States*, 373 U.S. at 15–17, 83 S.Ct. at 1077–78. Such a claim, however, may be addressed if the "ends of justice" so require. *Id.*

> For instance, reconsideration is appropriate if the petitioner has shown "change in the law or some other justification for having failed to raise a crucial point or argument in the prior application," [citation omitted], or if there are "new facts or legal developments warranting relitigation of the claim." [Citation omitted.]
>
> In addition, at least one panel of this Circuit has held that in order to relitigate repetitive claims, a petitioner must also make "a colorable showing of factual innocence." [Citations omitted]. A requirement of "factual innocence" supplements rather than supplants the "new factual/legal issues" development. [Citation omitted].

*Byrd v. Delo*, 917 F.2d 1037, 1039–40 (8th Cir.1990).

The record establishes that the confession claim asserted in the first petition was resolved on the merits. Pickens has now made a second confession claim. He represents that he has obtained newly discovered evidence and therefore has a justification for having failed to present these facts in his first petition. The newly discovered evidence is the Jack Lassiter affidavit in which he recounts a statement made to him by the interrogating officer.

The short answer to the position advanced by Pickens is that this evidence is not newly discovered. The Court agrees with respondent that Pickens knew of the basis for the claim at least by 1981, the year he filed his first petition. In fact, he knew of the basis for the claim the day it arose because he was the person to whom the remark by the interrogating officer was made. The claim is therefore deemed successive, and it is barred from federal review in accordance with Rule 9(b).

Assuming, arguendo, that the claim is not successive but new, and given the caution in Sanders that any doubt should be resolved in favor of Pickens, the Court finds that the claim should also be addressed pursuant to Rule 9(b) as if it were new.

"The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second ... petition for ... writ of habeas corpus." *McCleskey v. Zant*, 499 U.S. ——, 111 S.Ct. 1454, 1457, 113 L.Ed.2d 517 (1991). The doctrine is typically invoked when a new claim is asserted in a second petition but the claim was available at the time of the first petition. *Gilmore v. Delo*, 908 F.2d 385, 387 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 20, 111 L.Ed.2d 833 (1990). See also *Cornman v. Armontrout*, 959 F.2d 727, (8th Cir.1992); *Olds v. Armontrout*, 919 F.2d 1331, 1332 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1692, 114 L.Ed.2d 86 (1991). When abuse of the writ is alleged, McCleskey requires the following analysis:

> [T]he government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that prisoner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom

as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

*McCleskey v. Zant,* 499 U.S. at ——, 111 S.Ct. at 1470.

Respondent has outlined Pickens' prior writ history with clarity and particularity. Respondent has also identified the claim appearing for the first time and has alleged that Pickens has abused the writ. These allegations having been made, he has the burden to disprove that he abused the writ. He shoulders this burden by establishing cause and prejudice or that a fundamental miscarriage of justice will occur if the claim is not considered.

The cause apparently advanced by Pickens is that he only now obtained newly discovered evidence tending to support his claim of an involuntary confession, i.e., the affidavit of Jack Lassiter attesting to the threat made by the interrogating officer. As the Court has noted, however, the short answer to this assertion is that the evidence is not newly discovered. Pickens knew of the factual basis for the claim at least by 1981, the year he filed his first petition. In fact, he knew of the basis for the claim the day it arose because he was the person to whom the remark by the interrogating officer was made.

Having failed to show cause, Pickens is left to establish that the failure to consider this claim will result in a fundamental miscarriage of justice.

This exception applies only in "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." [Citations omitted]. To make such a showing, a petitioner must do more than merely "call into question the reliability of an adjudication of legal guilt." [Citation omitted]. The petitioner also must "show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilty."

*Cornman v. Armontrout,* at 730–31 [quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1986) (plurality) ] [emphasis added by Cornman court] [other citations omitted].

Pickens has failed to meet this stringent requirement. As the Court has previously noted, the evidence of his guilt is overwhelming. It is overwhelming even without his allegedly involuntary confession.

On the basis of the foregoing, the Court finds the assertion of this claim to be an abuse of the writ. The claim is therefore barred from federal review in accordance with Rule 9(b).[3]

ROSS v. OKLAHOMA CLAIM. The third claim advanced by Pickens challenges the manner in which the jury was selected during his 1988 re-sentencing. Respondent takes the position that the due process prong of this claim is barred by a procedural default, i.e., he failed to present the claim to an Arkansas state court. For the reasons outlined in Pickens' reply, the Court disagrees. This claim will be addressed on the merits at a later time.

CONCLUSION. On the basis of the foregoing, the Court finds that Pickens' recantation claim and the due process prong of his *Ross v. Oklahoma* claim are subject to federal review and will be addressed at a later time. His second claim, the claim alleging an involuntary confession, is barred from federal review pursuant to Rule 9(b) and will not be addressed.

---

**3.** Respondent also apparently maintains that the confession claim is barred by a procedural default. The Court agrees but declines to develop an analysis of the matter.

226

IT IS SO ORDERED this 22nd day of May, 1992.

/s/ Henry Woods
HENRY WOODS, U.S. District Judge

THIS DOCUMENT ENTERED ON DOCKET SHEET IN COMPLIANCE WITH RULE 58 AND/OR 79(a) FRCP ON 5-26-92 BY BMC